# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTINA HOLMES, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 3:15-CV-02117-L |
| NORTH TEXAS HEALTH CARE LAUNDRY COOPERATIVE ASSOCIATION, d/b/a NORTH TEXAS HEALTH CARE LAUNDRY, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

## APPENDIX TO DEFENDANT'S MOTION TO COMPEL

Monte K. Hurst
State Bar No. 00796802
Monte.Hurst@hallettperrin.com

Jennifer R. Poe
State Bar No. 00794470
JPoe@hallettperrin.com

HALLETT & PERRIN, P.C.
1445 Ross Avenue, Suite 2400
Dallas, Texas 75202
214.953.0053
(f) 214.922.4102

*Counsel for Defendant North Texas Health Care Laundry Cooperative Association, d/b/a North Texas Health Care Laundry*

## TABLE OF CONTENTS

| DOCUMENT | PAGES |
|---|---|
| Plaintiff's Responses to Defendant's First Set of Interrogatories to Plaintiff | APP 1 – 10 |
| Plaintiff's Responses to Defendant's First Set of Requests for Production to Plaintiff | APP 11 – 29 |
| Plaintiff's Initial Disclosures | APP 30 – 33 |
| December 1, 2015 Letter from Monte K. Hurst to Jay C. Enlgish | APP 34 – 42 |
| January 5, 2016 E-mail Message from Aaron Parrish to Monte K. Hurst | APP 43 |
| February 24, 2016 Letter from Monte K. Hurst to Jay C. English | APP 44 – 47 |
| U.S. Equal Employment Opportunity Commission Charge of Discrimination | APP 48 – 61 |
| Authority to Represent and Fee Agreement | APP 62 – 69 |

Respectfully submitted,

HALLETT & PERRIN, P.C.
1445 Ross Avenue, Suite 2400
Dallas, Texas 75202
214.953.0053
(f) 214.922.4142

By:    *Monte K. Hurst*
       Monte K. Hurst
       State Bar No. 00796802
       Monte.Hurst@hallettperrin.com

       Jennifer R. Poe
       State Bar No. 00794470
       JPoe@hallettperrin.com

       *Counsel for Defendant North Texas Health Care Laundry Cooperative Association, d/b/a North Texas Health Care Laundry*

## CERTIFICATE OF SERVICE

On March 8, 2016, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served Plaintiff's counsel as follows electronically or by another manner authorized by Rule 5(b)(2) of the Federal Rules of Civil Procedure:

Mr. J. Scott Perry
ENGLISH LAW GROUP, P.L.L.C.
7616 LBJ Freeway, Suite 401
Dallas, Texas 75251
SPerry@englishpllc.com

*Monte K. Hurst*
Monte K. Hurst

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTINA HOLMES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-02117-L |
| | § | |
| NORTH TEXAS HEALTH CARE | § | |
| LAUNDRY COOPERATIVE ASSOCIATION, | § | |
| d/b/a NORTH TEXAS HEALTH CARE | § | |
| LAUNDRY | § | |
| | § | |
| Defendant. | § | |

PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF
INTERROGATORIES TO PLAINTIFF

TO: NTHCL, Defendant, by and through its attorney of record, Mr. Monte Hurst, 1445 Ross Ave.,
Suite 2400, Dallas, Texas 75202.

INTERROGATORIES

INTERROGATORY NO. 1:
Please state the following for each person or company by whom you have been employed within
the last 10 years:

    (a)     Name of person/company;
    (b)     Address of person/company;
    (c)     Telephone number of person/company;
    (d)     Position held;
    (e)     Rate of pay;
    (f)     Supervisor;
    (g)     Dates of employment; and
    (h)     Reason for leaving.

ANSWER:  Plaintiff objects as overly broad and not likely to lead to evidence related to the case at
hand.  Subject to and without waiving this objection:

North Texas Healthcare Laundry
1080 Post N. Paddock St.
Grand Prairie, Texas 75052
469-916-1150
Customer Service Representative
Supervisor: Willy Chavez and David Hernandez
July 2013 to May 2014 - $47,000 per year
Employment ended due to sexual harassment and rape by Plaintiff's manager, David Hernandez.

**APP 1**

Sport Clips
1314 W. Pipeline Road
Hurst, Texas 76053
817-284-0503
Hair Stylist and Store Manager
Manager: Melinda Graywolf
2007 to June 2013 – Approximately $50,000 per year
Employment ended when Plaintiff sought employment with a more stable schedule and health insurance.

INTERROGATORY NO. 2:
Please state the name, address and telephone number of all doctors, psychologists, psychiatrists, counselors, therapists, and any and all medical care professionals that you have seen for a period of 10 years prior to the events on which this lawsuit is based and those you have seen subsequent to these events.

ANSWER:     Plaintiff objects to this Interrogatory as over broad in time.  Subject to and without waiving this objection:

Susan Schlosser
4516 Boat Club Road
Lake Worth, Texas 76135
817-238-0106

Amy Sigman
7777 Forrest Lane
Dallas, Texas 75230
972-566-7760

Kelly Cunningham
731 E. Southlake Boulevard, Suite 100
Southlake, Texas 76092
817-912-8800

Gary Kindley
3906 Lemmon Avenue, Suite 207
Dallas, Texas 75219
817-312-9919

INTERROGATORY NO. 3:
Please state the following for each marriage, if applicable:

     (a)     Date of marriage;
     (b)     Name of spouse;
     (c)     Name and age of each child from such marriage;
     (d)     Date of divorce; and
     (e)     County and state in which divorce was obtained.

ANSWER:     Plaintiff is common law married to Gary Dutchover, they have no children and have been living together since November 2006.

**APP 2**

INTERROGATORY NO. 4:
Other than this lawsuit, please list the following for each lawsuit in which you are/were a party:

     (a)     Style of cause;
     (b)     Cause number;
     (c)     Court; and
     (d)     County and state in which lawsuit was filed.

ANSWER:   Plaintiff has not been a party to any other lawsuit.

INTERROGATORY NO. 5:
Please state your gross and net income for each of the last five years, and identify the source(s) of same.

ANSWER:
2015 – No income
2014 – Gross income: $19,723 – Net income: $17,371 – North Texas Healthcare Laundry
2013 – Gross Income: $50,081 – Net Income: $50,081 – NTHCL and Sport Clips
2012 – Gross Income: $54,847 – Net Income: $54,847 – Sport Clips
2011 – Gross Income: $44,233 – Net Income: $44,233 – Sport Clips

INTERROGATORY NO. 6:
Please list the following for each location where you have resided in the 10 years prior to your filing this lawsuit:

     (a)     Address; and
     (b)     Dates of residence.

ANSWER:   Plaintiff objects to this Interrogatory as over broad in time.  Plaintiff objects as overly broad and not likely to lead to evidence related to the case at hand.  Subject to and without waiving this objection Plaintiff will disclose her place of residence for the last five years:

    2351 Norwich Lane, Grand Prairie, Texas 75052

INTERROGATORY NO. 7:
Please list the following for each criminal arrest and/or criminal charge against you:

     (a)     Style of case;
     (b)     Cause number;
     (c)     Court of jurisdiction;
     (d)     Description of criminal charges;
     (e)     Date of arrest; and
     (f)     Disposition.

ANSWER:   Plaintiff objects as overly broad and not likely to lead to evidence related to the case at hand.  Subject to and without waiving this objection Plaintiff will disclose for the last five years:    None exist.

INTERROGATORY NO. 8:
  Please describe in detail and itemize all damages, if any, which you are seeking to recover in this lawsuit.

ANSWER: Plaintiff objects to an improper discovery request, as there is no legal requirement that Plaintiff itemize damages in such fashion.  Plaintiff will further allow the jury and courts to determine the amount of damages.  For elements, Plaintiff refers to her pleadings.  Plaintiff objects to this Interrogatory as overly broad and unduly burdensome.  Plaintiff objects to this Interrogatory as vague and ambiguous.  Plaintiff objects to this Interrogatory to the extent that it assumes fact not yet in evidence. Subject to and without waiving this objection, Plaintiff seeks lost past and future wages, lost past and future benefits, pain and suffering, reimbursement for current and future medical costs, fees charged because Plaintiff has been unemployed, legal fees and attorney fees.

INTERROGATORY NO. 9:
  Please describe in detail any and all communication that you have had with employees or former employees of North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry or its affiliates relating to the subject matter of this lawsuit. Your answer shall include, but be not limited to, the dates of such communications, the persons involved in such communications, and the subject matters of such communications.

ANSWER:   Plaintiff only spoke about this matter with Phil and Mary prior to obtaining legal counsel.  Plaintiff has not discussed this matter with any current or former employees of NTHCL.

INTERROGATORY NO. 10:
  Please provide the following for any investigation relevant to this matter (this Interrogatory does not seek to discover information exempt from discovery by the work-product privilege and/or the attorney-client privilege):

  (a)   Identify the person or entity making the investigation; and
  (b)   Identify and describe all documents, reports, notes and/or tangible evidence collected or prepared in connection with or as a result of the investigation.

ANSWER:   Plaintiff objects to this Interrogatory to the extent that Defendant seeks information protected by the attorney-client privilege and/or work product doctrine. Subject to and without waiving this objection, Plaintiff has not had anyone investigate this matter other than her attorneys.

INTERROGATORY NO. 11:
  Please describe by category and location all documents, data compilations, and tangible things in your possession, custody, or control that are relevant to disputed facts alleged with particularity in the pleadings.

  ANSWER:   None other than those produced by Defendant in discovery.

**APP 4**

INTERROGATORY NO. 12:

Please state with particularity each and every fact that you would contend support(s) your allegation that, in September 2013, David Hernandez "started making sexual advances toward [Christina] Holmes," as alleged in Plaintiff's Original Complaint. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

ANSWER:   Plaintiff objects to this Interrogatory as overly broad and unduly burdensome. Plaintiff objects to this Interrogatory as vague and ambiguous.  Plaintiff objects to this Interrogatory to the extent it seeks to improperly require Plaintiff to marshal all her evidence and proof.   Plaintiff objects to this Interrogatory to the extent that it assumes fact not yet in evidence. Subject to and without waiving this objection, Plaintiff directs Defendant to review the live pleadings and Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission which is adopted by reference as if under oath.

INTERROGATORY NO. 13:

Please state with particularity each and every fact that you would contend support(s) your allegation that "[i]t was well known to [Christina] Holmes and other employees of [North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry] that [David] Hernandez used his power as general manager to seduce female employees to have sex with him," as alleged in Plaintiff's Original Complaint. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

ANSWER:   Plaintiff objects to this Interrogatory as overly broad and unduly burdensome. Plaintiff objects to this Interrogatory as vague and ambiguous.   Plaintiff objects to this Interrogatory to the extent it seeks to improperly require Plaintiff to marshal all her evidence and proof.   Plaintiff objects to this Interrogatory to the extent that it assumes fact not yet in evidence. Subject to and without waiving this objection, Plaintiff directs Defendant to review the live pleadings and Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission which is adopted by reference as if under oath.  I was told that he had a relationship with someone known as Kim at the workplace. Exact dates, times and locations are not recalled.

INTERROGATORY NO. 14:

Please state with particularity each and every fact that you would contend support(s) your allegation that David Hernandez "used his charm and manipulative behaviors to pressure [Christina] Holmes into a sexual relationship with him," as alleged in Plaintiff's Original Complaint. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.  Exact dates, times and locations are not recalled.

ANSWER:   Plaintiff objects to this Interrogatory as overly broad and unduly burdensome. Plaintiff objects to this Interrogatory as vague and ambiguous.   Plaintiff objects to this Interrogatory to the extent it seeks to improperly require Plaintiff to marshal all her evidence and proof.   Plaintiff objects to this Interrogatory to the extent that it assumes fact not yet in evidence. Subject to and without waiving this objection, Plaintiff directs Defendant to review the live pleadings and Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission which is adopted by reference as if under oath.  Exact dates, times and locations are not recalled.

**APP 5**

INTERROGATORY NO. 15:

Please state with particularity each and every fact that you would contend support(s) your allegation that Christina Holmes "continued to tell [David] Hernandez no to all of his advances," as alleged in Plaintiff's Original Complaint. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

ANSWER:    Plaintiff objects to this Interrogatory as overly broad and unduly burdensome. Plaintiff objects to this Interrogatory as vague and ambiguous.    Plaintiff objects to this Interrogatory to the extent it seeks to improperly require Plaintiff to marshal all her evidence and proof.    Plaintiff objects to this Interrogatory to the extent that it assumes fact not yet in evidence. Subject to and without waiving this objection, Plaintiff directs Defendant to review the live pleadings and Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission which is adopted by reference as if under oath.   Exact dates, times and locations are not recalled.

INTERROGATORY NO. 16:

Please state with particularity each and every fact that you would contend support(s) your allegation that David Hernandez "even went so far as to make up his own stories of having been sexually assaulted so as to get [Christina] Holmes to engage in a sexual relationship with him," as alleged in Plaintiff's Original Complaint. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

ANSWER:    Plaintiff objects to this Interrogatory as overly broad and unduly burdensome. Plaintiff objects to this Interrogatory as vague and ambiguous.    Plaintiff objects to this Interrogatory to the extent it seeks to improperly require Plaintiff to marshal all her evidence and proof.    Plaintiff objects to this Interrogatory to the extent that it assumes fact not yet in evidence. Subject to and without waiving this objection, Plaintiff directs Defendant to review the live pleadings and Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission which is adopted by reference as if under oath.   Exact dates, times and locations are not recalled.

INTERROGATORY NO. 17:

Please state with particularity each and every fact that you would contend support(s) your allegation that Christina Holmes "was very scared of [David] Hernandez and what he may do having just been sexually assaulted by him the day before," as alleged in Plaintiff's Original Complaint. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

ANSWER:    Plaintiff objects to this Interrogatory as overly broad and unduly burdensome. Plaintiff objects to this Interrogatory as vague and ambiguous.  Plaintiff objects to this Interrogatory to the extent it seeks to improperly require Plaintiff to marshal all her evidence and proof.    Plaintiff objects to this Interrogatory to the extent that it assumes fact not yet in evidence. Subject to and without waiving this objection, Plaintiff directs Defendant to review the live pleadings and Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission which is adopted by reference as if under oath.   Exact dates, times and locations are not recalled.

**APP 6**

INTERROGATORY NO. 18:

Please explain why, and how, the relationship between Christina Holmes and David Hernandez ended, and circumstances surrounding the end of the relationship.  Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

ANSWER:    Plaintiff objects to this Interrogatory as overly broad and unduly burdensome.  Plaintiff objects to this Interrogatory as vague and ambiguous.  Plaintiff objects to this Interrogatory to the extent it seeks to improperly require Plaintiff to marshal all her evidence and proof.    Plaintiff objects to this Interrogatory to the extent that it assumes fact not yet in evidence. Subject to and without waiving this objection, Plaintiff directs Defendant to review the live pleadings and Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission.  Plaintiff further states that she had been out shopping for a wedding dress, when she came home Mr. Dutchover seemed sad.  When Plaintiff enquired as to the sadness, he acknowledged knowing the details made basis of this lawsuit.  At this point, Mr. Dutchover contacted Mr. Hernandez and Phil disclosing his knowledge of the situation.  Exact dates, times and locations are not recalled.

INTERROGATORY NO. 19:

Please state with particularity each and every fact that you would contend support(s) your allegation that North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry, or any individual or entity related thereto, knew or should have known that David Hernandez was a "sexual predator," as alleged in Plaintiff's Original Complaint. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

ANSWER:    Plaintiff objects to this Interrogatory as overly broad and unduly burdensome.  Plaintiff objects to this Interrogatory as vague and ambiguous.  Plaintiff objects to this Interrogatory to the extent it seeks to improperly require Plaintiff to marshal all her evidence and proof.    Plaintiff objects to this Interrogatory to the extent that it assumes fact not yet in evidence. Subject to and without waiving this objection, Plaintiff directs Defendant to review the live pleadings and Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission.  Plaintiff further states that in prior instances at NTHCL, if a relationship were suspected by NTHCL, it would conduct an investigation. In this instance, NTHCL did not step in and did not conduct an investigation until it was contacted by Mr. Dutchover.  Exact dates, times and locations are not recalled.

**APP 7**

INTERROGATORY NO. 20:

Please state with particularity each and every fact that you would contend support(s) your allegation that, as a result of the actions of David Hernandez, Christina Holmes "is again suffering from the trauma of her sexual assault from her childhood and has been clinically diagnosed with Post Traumatic Stress Disorder," and her "psychotherapist believes that she will now need two to three years of intense psychotherapy to help heal her emotional scars, build self-esteem, develop healthy boundaries in relationships, and bring healing to her current relationship with her husband," all as alleged in Plaintiff's Original Complaint. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

ANSWER:   Plaintiff objects to this Interrogatory as overly broad and unduly burdensome.  Plaintiff objects to this Interrogatory as vague and ambiguous.  Plaintiff objects to this Interrogatory to the extent it seeks to improperly require Plaintiff to marshal all her evidence and proof.   Plaintiff objects to this Interrogatory to the extent that it assumes fact not yet in evidence. Subject to and without waiving this objection, Plaintiff directs Defendant to review the live pleadings and Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission. Because of the manipulation and objectification from Mr. Hernandez, old wounds were opened. Plaintiff has been told this by a professional counselor.  Exact dates, times and locations are not recalled but should be reflected in records.

INTERROGATORY NO. 21:

Please state with particularity each and every fact that you would contend support(s) your allegation that Christina Holmes was "constructively discharged" from her employment, as alleged in Plaintiff's Original Complaint. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

ANSWER:  Plaintiff was never notified about any investigations or remedial measures until after her damage was suffered.  By then, it was too late for Plaintiff to overcome her anxiety, depression and panic attacks to go to work in the same place she was raped.

INTERROGATORY NO. 22:

Please state with particularity each and every fact that you would contend support(s) your allegation that Christina Holmes was "continually exposed to a sexually hostile work environment that included sexually graphic comments by co-workers and supervisors, and the posting of sexually suggestive material throughout [North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry's] facility," as alleged in Plaintiff's Original Complaint. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

**APP 8**

ANSWER:   Plaintiff objects to this Interrogatory as overly broad and unduly burdensome.  Plaintiff objects to this Interrogatory as vague and ambiguous.  Plaintiff objects to this Interrogatory to the extent it seeks to improperly require Plaintiff to marshal all her evidence and proof.   Plaintiff objects to this Interrogatory to the extent that it assumes fact not yet in evidence. Subject to and without waiving this objection, Plaintiff directs Defendant to review the live pleadings and Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission.  Further Plaintiff states that she was subjected to inappropriate sexual comments by many of the employees at NTHCL.  Exact dates, times and locations are not recalled.

INTERROGATORY NO. 23:

Please describe in detail any and all complaints you made to North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry or an affiliate of the cooperative regarding David Hernandez. Your answer shall include, but be not limited to, the date of each such communication, the persons involved in such communication, and the subject matter of such communication.

ANSWER:   Plaintiff objects to this Interrogatory as overly broad and unduly burdensome.  Plaintiff objects to this Interrogatory as vague and ambiguous.  Plaintiff objects to this Interrogatory to the extent it seeks to improperly require Plaintiff to marshal all her evidence and proof.   Plaintiff objects to this Interrogatory to the extent that it assumes fact not yet in evidence. Subject to and without waiving this objection, Plaintiff directs Defendant to review the live pleadings and Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission.  Plaintiff further states that she did not complain other than to Phil and Mary because she was never made to believe that any legitimate action would ever occur.  Additionally, Plaintiff feared additional retaliation by NTHCL.

INTERROGATORY NO. 24:

Please describe in detail any and all efforts you made to obtain gainful employment after your separation from North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry. Your answer shall include, but be not limited to, the dates of such efforts,  identification of the persons with whom you spoke in your efforts, descriptions of any communication pertaining to your efforts, and descriptions of all documents pertaining to your efforts.

ANSWER:   Plaintiff objects to this Interrogatory as overly broad and unduly burdensome.  Plaintiff objects to this Interrogatory as vague and ambiguous.  Plaintiff objects to this Interrogatory to the extent it seeks to improperly require Plaintiff to marshal all her evidence and proof.   Plaintiff objects to this Interrogatory to the extent that it assumes fact not yet in evidence. Subject to and without waiving this objection, Plaintiff's attempts to work are limited to trying to work in a hair salon.  Because of Defendant's certain actions and lack of certain actions, when Plaintiff is near people or strangers, her anxiety and stress soar causing her to be unable to work.  Exact dates, times and locations are not recalled.

<u>INTERROGATORY NO. 25</u>:

  Please state the date on which you first hired an attorney to represent you in this matter, and identify each attorney who has represented you in this matter.

<u>ANSWER</u>:     Plaintiff objects to this Interrogatory to the extent that Defendant seeks information protected by the attorney-client privilege and/or work product doctrine. Plaintiff objects as overly broad and not likely to lead to evidence related to the case at hand.  Defendant and its counsel are aware that Plaintiff has counsel and that counsel is the undersigned in these discovery responses.

Respectfully submitted,
ENGLISH LAW GROUP, P.L.L.C.
*/s/ **Jay English***
State Bar No. 06625290
jenglish@englishpllc.com
7616 LBJ Freeway, Suite 401
Dallas, Texas 75251
214-528-4300 phone
972-733-1335 fax

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing instrument has been forwarded via first class mail and email on  November 18, 2015, to all counsel of record.

*/s/ Jay English*

**APP 10**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTINA HOLMES, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-02117-L |
| | § | |
| NORTH TEXAS HEALTH CARE | § | |
| LAUNDRY COOPERATIVE ASSOCIATION, | § | |
| d/b/a NORTH TEXAS HEALTH CARE | § | |
| LAUNDRY | § | |
| | § | |
| *Defendant.* | § | |

PLAINTIFF'S RESPONSES TO DEFENDANT'S
FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF

TO:    NTHCL, Defendant, by and through its attorney of record, Mr. Monte Hurst, 1445
       Ross Ave., Suite 2400, Dallas, Texas 75202.

GENERAL OBJECTIONS

1)      Defendant has brought forth ninety (90) requests for production.  This is obviously brought
with the intent to harass, be unduly burdensome, and cause unnecessary additional legal expenses
for both Plaintiff and Defendant.  Defendant's counsel through its actions is seeking to impose
substantial burden on the Plaintiff and harass Plaintiff simultaneously.

REQUESTS FOR PRODUCTION

REQUEST NO. 1:
Please produce any and all reports, data, calculations, handwritten notes or other tangible evidence
and documents reviewed, relied upon, prepared by and/or at the direction of or for the use of any
expert that you intend to call at the trial of this cause, whether by live testimony or by deposition.
If a report has not been prepared, then a request is hereby made that a report be prepared and
produced.

RESPONSE: Plaintiff reasserts the general objection.  Subject to and without waiving this
objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered
to Defendant prior to the bringing of this suit. Also, see redundant copies attached.

REQUEST NO. 2:
Please produce any and all documents, investigation reports, notes, simulations, recreations,
calculations or analysis, concerning any incident relevant to this lawsuit made or prepared by any
person or entity who has done any investigations relating to the occurrences in question, including,

but not limited to, any governmental or private entities. This request is not seeking production of documents prepared in anticipation of litigation and whose work product has *not* been reviewed in whole or in part, by any testifying expert.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 3:
Please produce all documents prepared by or at the direction of any person who may testify in this lawsuit as an expert witness, including but not limited to records, notes, memoranda, charts, reports, studies or exhibits.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 4:
Please produce all documents reviewed by or relied upon by an expert witness who you have hired, consulted, or contacted to testify as an expert witness.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 5:
Please produce all documents relating to, referring to, or regarding documents reviewed or relied upon by an expert witness who has been hired, consulted, or contacted by you to testify as an expert witness.

RESPONSE:
Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 6:
Please produce any audio recordings which relate in any way to the subject matter of this lawsuit.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, none in our possession.

REQUEST NO. 7:
Please produce any video which relates in any way to the subject matter of this lawsuit.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, none in our possession.

REQUEST NO. 8:
Please produce any photographs or pictures which relates in any way to the subject matter of this lawsuit.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, Plaintiff is unaware of being photographed or taped in any of these encounters.

REQUEST NO. 9:
Please produce any newspaper or magazine articles, television video or any other media coverage that related in any way to the subject matter of this lawsuit.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, see attached.

REQUEST NO. 10:
Please produce any correspondence, memoranda and/or other transcribed documentation  between North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry and any other party, entity or individual, including but not limited to you, regarding this lawsuit.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, Plaintiff objects as burdensome and harassing.  Any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 11:
Please produce any statements made by North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry or any agent, attorney, representative or employee of North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry, including but not limited to you, as such statement may pertain to this litigation.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, none other than those produced by defendant.

REQUEST NO. 12:
Please produce any statements made by you or any of your agents, attorneys, representatives and/or employees as it may pertain to this litigation.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 13:
Please produce all documents relating to, referencing or regarding communications with North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry or any agent, representative, personnel or employee of North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry.

**APP 13**

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 14:
Please produce all documents relating to, referencing or regarding other lawsuits to which you have been a party.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, none.

REQUEST NO. 15:
Please produce all documents indicating, reflecting, memorializing, or constituting any  settlement agreement of any kind (whether oral, written or otherwise) made by you, on behalf of you or any other person regarding any of the claims or causes of action concerning the events in question.

RESPONSE:   Plaintiff reasserts the general objection, none.

REQUEST NO. 16:
Please produce any and all photographs, charts or exhibits that you intend to use at the trial of this matter.

RESPONSE:  Plaintiff reasserts the general objection in addition to attorney-client privilege and work product privilege.  Subject to and without waiving this objection, Plaintiff will comply with the Court's scheduling order.

REQUEST NO. 17:
Please provide a copy of any indemnity agreement between any party to this case and non-party that is relevant to the events made the basis of this suit.

RESPONSE:   None.

REQUEST NO. 18:
Please provide copies of any and all criminal convictions that you intend to use at the trial to impeach any witness.

RESPONSE:   None at this time.

REQUEST NO. 19:
Please produce any and all documents, income statements, expenses, statements, bills and/or invoices which reflect in any way damages you are seeking to recover in this lawsuit.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 20:
Please produce any and all documents exchanged between you and the U.S. Equal Employment Opportunity Commission.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 21:
Please produce any and all documents exchanged between you and the Texas Workforce Commission.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 22:
Please produce any and all documents exchanged between you and the Texas Workforce Commission Civil Rights Division.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 23:
Please produce your retainer agreement with English Law Group.

RESPONSE:   Plaintiff reasserts the general objection, plus relevance and attorney-client privilege.

REQUEST NO. 24:
Please produce all documents obtained by you by subpoena or by deposition upon written questions in this lawsuit.

RESPONSE:   None.

REQUEST NO. 25:
Please produce all documents identified in your answers to Defendant's First Set of Interrogatories

to Plaintiff.

RESPONSE:  Plaintiff reasserts the general objection, plus vague and confusing as to what documents Plaintiff is to produce.

REQUEST NO. 26:
Please produce any and all documents evidencing your efforts to obtain gainful employment from your last day of work at North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry to the present, including, but not limited to, employment applications, résumés submitted, cover letters, offer letters, and rejection letters.

RESPONSE:  None.

REQUEST NO. 27:
Please produce any and all documents evidencing your employment from your last day of work at North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry to the present, including, but not limited to, paystubs, company correspondence and memoranda, company handbook and policy manuals, and company benefits.

RESPONSE:  None.

REQUEST NO. 28:
Please produce any and all documents that you would contend support(s) your allegation that, in September 2013, David Hernandez "started making sexual advances towards [Christina] Holmes," as alleged in Plaintiff's Original Complaint.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 29:
Please produce any and all documents that you would contend support(s) your allegation that, in September 2013, David Hernandez "made [Willy] Chavez's management of [Christina] Holmes very difficult so that she would have to come to Mr. Hernandez more frequently for guidance," as alleged in Plaintiff's Original Complaint.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 30:
Please produce any and all documents that you would contend support(s) your allegation that "[i]n her day-to-day work, [Christina] Holmes was forced to have to work very closely with [David] Hernandez," as alleged in Plaintiff's Original Complaint.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered

to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 31:
Please produce any and all documents that you would contend support(s) your allegation that [i]t was well known to [Christina] Holmes and other employees of [North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry] that [David] Hernandez used his power as general manager to seduce female employees to have sex with him," as alleged in Plaintiff's Original Complaint.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 32:
Please produce any and all documents that you would contend support(s) your allegation that "[o]ffice knowledge was that [David] Hernandez had a sexual relationship with another Customer Service Representative, Ms. Anonymous (name omitted for privacy of third party, referred to herein as "Ms. Anonymous")," as alleged in Plaintiff's Original Complaint.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 33:
Please produce any and all documents that you would contend support(s) your allegation that, prior to the commencement of a physical relationship between Christina Holmes and David Hernandez, Mr. Hernandez would compliment Ms. Holmes by saying things like 'you're hot', 'you're beautiful', and 'I wanna do you'," as alleged in Plaintiff's Original Complaint.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 34:
Please produce any and all documents pertaining to Christina Holmes' subjugation to sexual assault by her uncle, including counseling and therapy at the age of 14 (referenced in Plaintiff's Original Complaint), and before and after the age of 14.

RESPONSE:  Plaintiff reasserts the general objection, patient-physician privilege and mental health privilege.

REQUEST NO. 35:
Please produce any and all documents that you would contend support(s) your allegation that David Hernandez "used his charm and manipulative behaviors to pressure [Christina] Holmes into a sexual relationship with him," as alleged in Plaintiff's Original Complaint.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this

objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 36:
Please produce any and all documents that you would contend support(s) your allegation that David Hernandez "took this information about [Christina Holmes'] prior sexual assault and used it to manipulate Ms. Holmes," as alleged in Plaintiff's Original Complaint.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 37:
Please produce any and all documents that you would contend support(s) your allegation that Christina Holmes "continued to tell [David] Hernandez no to all of his advances," as alleged in Plaintiff's Original Complaint.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 38:
Please produce any and all documents that you would contend support(s) your allegation that David Hernandez "even went so far as to make up his own stories of having been sexually assaulted so as to get [Christina] Holmes to engage in a sexual relationship with him," as alleged in Plaintiff's Original Complaint.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 39:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form  of written or electronic communication between Christina Holmes and David Hernandez pertaining to their relationship, including but not limited to their comments about sexual experiences together.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 40:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form  of written or electronic communication between Christina Holmes and David Hernandez discussing when and where they would meet, including but not limited to invitations to meet and responses thereto.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 41:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form  of written or electronic communication between Christina Holmes and David Hernandez discussing, mentioning or referring to Gary Dutchover.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 42:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form  of written or electronic communication between Christina Holmes and Gary Dutchover discussing, mentioning or referring to David Hernandez.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 43:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form  of written or electronic communication between Christina Holmes and Gary Dutchover discussing or pertaining to the physical relationship between Ms. Holmes and David Hernandez.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.

REQUEST NO. 44:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form  of written or electronic communication between Christina Holmes and Gary Dutchover discussing or pertaining to the status of their relationship in light of Mr. Dutchover's learning of the physical relationship between Ms. Holmes and David Hernandez.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 45:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form  of written or electronic communication between Christina Holmes and Gary Dutchover discussing or relating to the possibility of Ms. Holmes initiating legal action against David Hernandez and/or North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry.

RESPONSE: Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 46:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form of written or electronic communication between Christina Holmes and Gary Dutchover discussing or relating to Ms. Holmes continuing to work for North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry.

RESPONSE: Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 47:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form of written or electronic communication between Christina Holmes and Gary Dutchover discussing, mentioning, referring to, or relating to any electronic devices used by Ms. Holmes during her employment at North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry.

RESPONSE: Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 48:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form of written or electronic communication between Christina Holmes and Gary Dutchover discussing, mentioning, referring to, or relating to the damage to any electronic devices used by Ms. Holmes during her employment at North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry, including the cause of the damage.

RESPONSE: Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 49:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form of written or electronic communication between Christina Holmes and Gary Dutchover discussing, mentioning, referring to, or relating to Mr. Dutchover's reactions to learning of the physical relationship between Ms. Holmes and David Hernandez, including but not limited to Mr. Dutchover's temper tantrums, Mr. Dutchover's threatening to kill Mr. Hernandez, Mr. Dutchover's insistence on confronting Mr. Hernandez, and Mr. Dutchover's destruction of property (including damaging any electronic devices used by Ms. Holmes during her employment at North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry).

RESPONSE: Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered

to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 50:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form of written or electronic communication between Christina Holmes and David Hernandez discussing, mentioning or referring to Robin Brinkley Holmes.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.

REQUEST NO. 51:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form of written or electronic communication between Christina Holmes and Robin Brinkley Holmes pertaining to David Hernandez.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 52:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form of written or electronic communication between Christina Holmes and Robin Brinkley Holmes pertaining to North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry or any individual or entity affiliated with the cooperative.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 53:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form of written or electronic communication between Christina Holmes and Robin Brinkley Holmes discussing or pertaining to the physical relationship between Ms. Holmes and David Hernandez.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 54:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form of written or electronic communication between Christina Holmes and Robin Brinkley Holmes discussing or pertaining to the status of the relationship between Ms. Holmes and Gary Dutchover in light of Mr. Dutchover's learning of the physical relationship between Ms. Holmes and David Hernandez.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this

objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 55:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form  of written or electronic communication between Christina Holmes and Robin Brinkley Holmes discussing or relating to the possibility of Ms. Holmes initiating legal action against David Hernandez and/or North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 56:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form  of written or electronic communication between Christina Holmes and Robin Brinkley Holmes discussing or relating to Ms. Holmes continuing to work for North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 57:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form  of written or electronic communication between Christina Holmes and Robin Brinkley Holmes discussing, mentioning, referring to, or relating to any electronic devices used by Ms. Holmes during her employment at North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 58:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form  of written or electronic communication between Christina Holmes and Robin Brinkley Holmes discussing, mentioning, referring to, or relating to the damage to any electronic devices used by Ms. Holmes during her employment at North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry, including the cause of the damage.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 59:
Please produce any and all correspondence, e-mail, text, instant message and/or any other form  of written or electronic communication between Christina Holmes and Robin Brinkley Holmes discussing, mentioning, referring to, or relating to Gary Dutchover's reaction to learning of the physical relationship between Ms. Holmes and David Hernandez, including but not limited to Mr. Dutchover's temper tantrums, Mr. Dutchover's threatening to kill Mr. Hernandez,  Mr. Dutchover's insistence on confronting Mr. Hernandez, Mr. Dutchover's destruction of property (including damaging any electronic devices used by Ms. Holmes during  her employment at North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry).

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 60:
Please produce any and all documents that you would contend support(s) your allegation that any of the sexual affairs between Christina Holmes and David Hernandez was not consensual.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 61:
Please produce any and all documents that you would contend support(s) your allegation that any of the sexual affairs between Christina Holmes and David Hernandez was an act  of rape or sexual assault.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 62:
Please produce any and all documents that you would contend support(s) your allegation that David Hernandez's conduct toward Christina Holmes constituted sexual harassment.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 63:
Please produce any and all documents that you would contend support(s) your allegation that Christina Holmes regarded any of the sexual affairs between her and David Hernandez as not consensual.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

**APP 23**

REQUEST NO. 64:
Please produce any and all documents that you would contend support(s) your allegation that Christina Holmes regarded any of the sexual affairs between her and David Hernandez as an act of rape or sexual assault.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 65:
Please produce any and all documents that you would contend support(s) your allegation that Christina Holmes regarded David Hernandez's conduct toward her as sexual harassment.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 66:
Please produce any and all documents pertaining to Christina Holmes' complaining to or discussing with anyone, at North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry or any individual or entity associated with the cooperative, regarding  David Hernandez, including but not limited to sexual harassment, sexual assault, rape, or inappropriate behavior.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 67:
Please produce any and all documents pertaining to the investigation of the private investigator hired by Gary Dutchover, including but not limited to all materials produced by the private investigator, all materials submitted to the private investigator, audio recordings, video recordings, pictures, photographs and electronic media.

RESPONSE:   Plaintiff reasserts the general objection.  None in our control.

REQUEST NO. 68:
Please produce any and all documents pertaining to Christina Holmes seeking, obtaining and/or discussing medical care, counseling or therapy prior to the cessation of her physical relationship with David Hernandez and during the relationship with Mr. Hernandez, including but not limited to relating to her having been sexually assaulted by her uncle and relating to her relationship with Gary Dutchover. This Request would certainly include medical/doctor/therapist/counselor records.

RESPONSE:  Plaintiff reasserts the general objection, patient-physical privilege and mental health privilege.

REQUEST NO. 69:
Please produce any and all documents pertaining to Christina Holmes seeking, obtaining and/or discussing medical care, counseling or therapy after the cessation of her physical relationship with David Hernandez, including but not limited to relating to Mr. Hernandez and relating to Gary Dutchover. This Request would certainly include medical/doctor/therapist/counselor records. This Request would certainly include treatment for conditions Ms. Holmes were caused by Mr. Hernandez.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 70:
Please produce any and all documents pertaining to the termination of the physical relationship between Christina Holmes and David Hernandez, including the reason(s) for termination of the relationship and who made the decision to terminate the relationship.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 71:
Please produce any and all documents that you would contend support(s) your allegation North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry knew or should have known that David Hernandez was a "sexual predator," as alleged in Plaintiff's Original Complaint.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 72:
Please produce any and all documents showing or even suggesting that North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry or any company affiliated with the cooperative knew or should have known that David Hernandez acted inappropriately toward any employee, including Christina Holmes.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 73:
Please produce any and all documents showing or even suggesting that North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry or any entity affiliated with the cooperative received a complaint about David Hernandez's conduct in the workplace.

RESPONSE:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered

APP 25

to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 74:
Please produce any and all documents showing or even suggesting that North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry or any entity affiliated with the cooperative would tolerate or not take seriously sexual harassment, sexual assault or rape.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 75:
Please produce any and all documents that you would contend support(s) your allegation North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry "did nothing to stop the sexual harassment of David Hernandez," as alleged in Plaintiff's Original Complaint.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 76:
Please produce any and all documents that you would contend support(s) your allegation that Christina Holmes was exposed to a sexually hostile work environment at North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry, including "sexually graphic comments by co-workers and supervisors, and the posting of sexually suggestive material throughout [the] facility," all as alleged in Plaintiff's Original Petition.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 77:
Please produce any and all documents that you would contend support(s) your allegation that Christina Holmes was constructively discharged from North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry, as alleged in Plaintiff's Original  Complaint.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 78:
Please produce all documents that you would contend support(s) your allegation that you have suffered lost wages and loss of employment benefits as a result of the allegations in this lawsuit.

RESPONSE:  Plaintiff reasserts the general objection.  Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

<u>REQUEST NO. 79</u>:
Please produce all documents that you would contend support(s) your allegation that you have incurred expenses for medical care and/or therapy as a result of the allegations in this lawsuit.

<u>RESPONSE</u>:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

<u>REQUEST NO. 80</u>:
Please produce all documents that you would contend support(s) your allegation that you have suffered mental anguish as a result of the allegations in this lawsuit.

<u>RESPONSE</u>:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

<u>REQUEST NO. 81</u>:
Please produce all documents that you would contend support(s) your allegation that you continue to suffer mental anguish as a result of the allegations in this lawsuit.

<u>RESPONSE</u>:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

<u>REQUEST NO. 82</u>:
Please provide copies of the front and back of your driver's license.

<u>RESPONSE</u>:  Plaintiff reasserts the general objection in addition to relevance, materiality and privacy.

<u>REQUEST NO. 83</u>:
Please produce any and all federal income tax returns filed by you from 2005 to current.

<u>RESPONSE</u>:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

<u>REQUEST NO. 84</u>:
Please produce any and all Forms W-2 filed by you from 2005 to current.

<u>RESPONSE</u>:  Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

<u>REQUEST NO. 85</u>:
Please execute the attached Form 4506 (Request for Copy of Transcript of Tax Form).

RESPONSE:   Plaintiff reasserts the general objection in addition to her right to privacy.

REQUEST NO. 86
Attached is an authorization for the release of medical records pertaining to Christina Holmes. Please sign the authorization and return it with your responses.

RESPONSE:   Plaintiff reasserts the general objection, in addition to patient-physician privilege and mental health privilege.

REQUEST NO. 87:
Attached is an authorization for the release of your employment records pertaining to Christina Holmes.  Please sign the authorization and return it with your responses.

RESPONSE:   Plaintiff reasserts the general objection and her right to privacy.

REQUEST NO. 88:
Attached is an authorization for the release of your unemployment benefits file from the Texas Workforce Commission.  Please sign the authorization and return it with your responses.

RESPONSE:   Plaintiff reasserts the general objection and her right to privacy.

REQUEST NO. 89:
Please produce a copy of your résumé.

RESPONSE:   Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached.

REQUEST NO. 90:
Please produce all documents identified in Plaintiff's Initial Disclosures.

RESPONSE:   Plaintiff reasserts the general objection.   Subject to and without waiving this objection, any responsive documents (if they exist or existed in Plaintiff's control) were delivered to Defendant prior to the bringing of this suit.

> Respectfully submitted,
> ENGLISH LAW GROUP, P.L.L.C.
> */s/ Jay English*
> State Bar No. 06625290
> jenglish@englishpllc.com
> 7616 LBJ Freeway, Suite 401
> Dallas, Texas 75251
> 214-528-4300 phone
> 972-733-1335 fax

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded via first class mail and email on November 18, 2015, to all counsel of record.

*/s/ Jay English*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CHRISTINA HOLMES,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 3:15-CV-02117-L** |
| **NORTH   TEXAS   HEALTH   CARE** | § | |
| **LAUNDRY   COOPERATIVE** | § | |
| **ASSOCIATION,      d/b/a      NORTH** | § | |
| **TEXAS HEALTH CARE LAUNDRY,** | § | |
| *Defendant.* | § | |

## PLAINTIFF'S INITIAL DISCLOSURES

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Plaintiff, Christina Holmes, hereby serves Plaintiff's Initial Disclosures.

## I.

Pursuant to Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure, Plaintiff lists as follows the name, address and telephone number of each individual likely to have discoverable information that Plaintiff may use to support her claims in this case and, for each person, identification of the subject matter of the information:

Christina Holmes
2351 Norwich Lane
Grand Prairie, Texas 75052
817.204.3829
Plaintiff in this lawsuit and former employee of NTHCL

Gary Dutchover
2351 Norwich Lane
Grand Prairie, Texas 75052
817.204.3829

Robin Holmes
Will supplement with address.
817.825.1440

David Hernandez
100 Edinburgh Court
Highland Village, Texas 75077
972.899.0169
General Manager at NTHCL's facility.

Mary Khan
1080 Post and Paddock Street
Grand Prairie, Texas 75050
469.916.1164
Human Resources at NTHCL

Custodian of Records
U.S. Equal Employment Opportunity Commission
207 South Houston Street, 3rd Floor
Dallas, Texas 75202

Custodian of Records
Texas Workforce Commission Civil Rights Division
101 East 15th Street, Room 266
Austin, Texas 78778

Custodian of Records
Texas Workforce Commission 101
East 15th Street, Room 266
Austin, Texas 78778

Susan Schlosser
4516 Boat Club Road
Lake Worth, Texas 76135
817.238.0106

Amy Sigman
7777 Forrest Lane
Dallas, Texas 75230
972.566.7760

Kelly Cunningham
731 E. Southlake Boulevard, Suite 100
Southlake, Texas 76092
817.912.8800

Gary Kindley

3906 Lemmon Avenue, Suite 207
Dallas, Texas 75219
817.312.9919

## II.

Pursuant to Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure, Plaintiff lists as follows documents, which it may use to support her claims in this case:

North Texas Health Care Laundry Cooperative Association Employee Handbook, Personnel File of Christina Holmes, E-mail Messages between Christina Holmes and David Hernandez (March 2014-May 2014), Statement of David Hernandez, and Documents recovered from Christina Holmes' company-issued cell phone. Plaintiff will supplement as additional documents come to her knowledge through discovery.

## III.

Pursuant to Rule 26(a)(1)(C) of the Federal Rules of Civil Procedure, Plaintiff seeks lost past and future wages, lost past and future benefits, reimbursement for current and future medical costs, fees charged because Plaintiff has been unemployed, legal fees and attorney fees.

## IV.

Pursuant to Rule 26(a)(1)(D) of the Federal Rules of Civil Procedure, Plaintiff is aware that Defendant has an insurance agreement under which it may be liable to satisfy all or part of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

Respectfully submitted,
ENGLISH LAW GROUP, P.L.L.C.
*/s/ Jay English*
State Bar No. 06625290
jenglish@englishpllc.com
7616 LBJ Freeway, Suite 401
Dallas, Texas 75251
214-528-4300 phone
972-733-1335 fax

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded via first class mail and email on November 18, 2015, to all counsel of record.

*/s/ Jay English*



Hallett & Perrin, P.C.

1445 Ross Avenue
Suite 2400
Dallas, Texas 75202
www.hallettperrin.com

Monte K. Hurst
Board Certified, Labor and Employment Law
Texas Board of Legal Specialization
direct dial – 214.922.4111
fax – 214.922.4142
monte.hurst@hallettperrin.com

December 1, 2015

Mr. Jay C. English                                    **Via e-mail: JEnglish@englishpllc.com;**
ENGLISH LAW GROUP, P.L.L.C                            **Via Telecopy: 972.733.1335**
7616 LBJ Freeway, Suite 401
Dallas, Texas 75251

Mr. J. Scott Perry                                    **Via e-mail: SPerry@englishpllc.com;**
ENGLISH LAW GROUP, P.L.L.C.                           **Via Telecopy: 972.733.1335**
7616 LBJ Freeway, Suite 401
Dallas, Texas 75251

> Re:   Civil Action No. 3:15-CV-02117-L
>       Our File No.: 39248/1
>       *Christina H. Holmes vs. North Texas Health Care Laundry*
>       *Cooperative Association, d/b/a North Texas Health Care Laundry*

Dear Jay and Scott:

I am writing to address significant deficiencies in Plaintiff's discovery responses, in the hope that you and your client will be willing to remedy such deficiencies without the need for Court intervention.

**Plaintiff's Initial Disclosures**

Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure requires that the disclosing party provide "the name, and if known, the address and telephone number of each individual likely to have discoverable information — *along with the subjects of that information* — that the disclosing party may use to support its claims or defenses." Plaintiff's Initial Disclosures identify nine individuals (along with three generic "Custodian[s] of Records") without setting forth the "subjects of th[e] information" such individuals are expected to provide. As such, Plaintiff's Initial Disclosures fail to comply with the Rule. Please provide amended initial disclosures that include all of the required information.

**APP 34**

Mr. Jay C. English
Mr. J. Scott Perry
December 1, 2015
Page 2

Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure requires that the disclosing party provide "a *computation* of each category of damages claimed by the disclosing party." Plaintiff's Initial Disclosures contain no computations of any kind, but instead only list generic categories of damages (*e.g.*, "reimbursement for current and future medical costs"). As such, Plaintiff's Initial Disclosures fail to comply with the Rule. Please provide amended initial disclosures that include all of the required information.

**Plaintiff's Answers to Defendant's First Set of Interrogatories**

Your objections to interrogatories have improperly been asserted "reflexively — but not reflectively — and without a factual basis."[1] As a result, Plaintiff's interrogatory answers provide almost no information whatsoever with regard to Plaintiff's purported claims.

### *Boilerplate "Overly Broad" Objections*

Plaintiff asserts an "overly broad" objection to Interrogatory Nos. 1, 2, 6, 7, 8, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, and 25. As the recent *Heller* opinion out of the U.S. District Court for the Northern District of Texas makes clear, it is not sufficient merely to state, without any explanation, that a request is "overly broad." Rather, "the responding party *must* . . . explain the extent to which it is overbroad . . . and explain the scope of what the responding party is answering or responding to."[2] With the exception of a few responses that generically refer to the interrogatories being overly broad "in time," Plaintiff's interrogatory answers offer no explanation whatsoever as to what Plaintiff claims makes any particular interrogatory "overly broad."

I do not believe that any of the interrogatories posed to Plaintiff is in any way "overly broad." In fact, many of the interrogatories merely ask Plaintiff to provide specific details in support for *her own allegations*. In light of this fact, and the fact that Plaintiff's objections fail to specifically identify what is purportedly "objectionable," I hereby request that Plaintiff withdraw her "overly broad" objections, and that she amend her interrogatory answers accordingly.

### *Boilerplate "Unduly Burdensome" Objections*

Plaintiff asserts an "unduly burdensome" objection to Interrogatory Nos. 8, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, and 24. Just as with the "overly broad" objections discussed above, it is not sufficient for a responding party to merely to state, without any further explanation, that a request is "unduly burdensome." Rather, "the responding party must . . . *properly substantiate that assertion*."[3] Plaintiff's "unduly burdensome" objections offer no such "substantiation."

---

[1] *Heller v. City of Dallas*, 303 F.R.D. 466, 477 (N.D. Tex. 2014) (quoting *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008).
[2] *Heller*, 303 F.R.D. at 488 (emphasis added).
[3] *Heller*, 303 F.R.D. at 489 (emphasis added).

Mr. Jay C. English
Mr. J. Scott Perry
December 1, 2015
Page 3

I do not believe that any of the interrogatories posed to Plaintiff is in any way "unduly burdensome." If it is somehow "unduly burdensome" for Plaintiff to have to provide the facts that support her own allegations, then she can avoid such "burden" by voluntarily dismissing this lawsuit. Assuming Plaintiff is not willing to do so, I hereby request that Plaintiff withdraw her "unduly burdensome" objections, and that she amend her interrogatory answers accordingly.

### Boilerplate "Vague and Ambiguous" Objections

Plaintiff asserts a "vague and ambiguous" objection to Interrogatory Nos. 8, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, and 24. Once again, it is insufficient for a responding party to merely complain that a particular discovery request is "vague and ambiguous." Any objection relying on this basis must both identify what terms or phrases are supposedly "vague" and/or "ambiguous" and then "explain [the party's] understanding of the allegedly vague and ambiguous terms or phrases and explicitly state that [the party's] answer is based on that understanding."[4]

I do not believe that any of the interrogatories posed to Plaintiff is in any way "vague" or "ambiguous." As noted previously, many of the interrogatories merely ask Plaintiff to provide specific details in support of her own allegations, which are quoted verbatim from Plaintiff's Original Complaint. If Plaintiff does not know what her own words mean, then who does? In light of these facts, I hereby request that Plaintiff withdraw her "vague and ambiguous" objections, and that she amend her interrogatory answers accordingly.

### Other Boilerplate/"To the Extent" Objections

Plaintiff asserts a variety of other boilerplate objections to a number of the interrogatories. These objections include the assertion that the interrogatory is "not likely to lead to evidence related to the case at hand" (*see* Interrogatory Nos. 1, 6, 7, and 25), and objections "to the extent" the interrogatory "seeks to improperly require Plaintiff to marshal all her evidence and proof" and "to the extent" the interrogatory "assumes facts not yet in evidence" (*see* Interrogatory Nos. 8, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, and 24). As the opinion in *Heller* makes clear, these objections are as improper as the other boilerplate objections discussed above.[5] Accordingly, I hereby request that Plaintiff withdraw all of these additional improper objections, and that she amend her interrogatory answers accordingly.

### Responses Made "Subject to" Objections

The majority of Plaintiff's interrogatory answers are made "[s]ubject to and without waiving" Plaintiff's various objections (*see* Interrogatory Nos. 1, 2, 6, 7, 8, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, and 24). As the *Heller* court noted, such practice is "manifestly confusing

---

[4] *Heller*, 303 F.R.D. at 488.

[5] *See Heller*, 303 F.R.D. at 489 (stating that "the responding party should make a specific objection explaining how and to what extent the requested documents or information are not relevant and discoverable under the Rule 26(b) standard"); *id.* at 483 (discussing objections made "to the extent" they apply: "Such objections are considered mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery.") (internal quotation marks omitted) (quoting *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 666-67 (D. Kan. 2004)).

Mr. Jay C. English
Mr. J. Scott Perry
December 1, 2015
Page 4

(at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure."[6] We should not have to "guess[] and wonder[] as to the scope of the . . . information that will be provided as responsive will be."[7]  I hereby request that in conjunction with Plaintiff's withdrawal of her improper boilerplate objections, Plaintiff also refrain from such confusing/misleading attempts to qualify her interrogatory answers.

### Improper Reference to Plaintiff's Complaint and Charge

Rather than actually providing a substantive answer to a number of the interrogatories, Plaintiff merely "directs Defendant to review the live pleadings and Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission" (*see* Interrogatory Nos. 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, and 23).  It should be noted that Plaintiff's Charge contains no more specific details about Plaintiff's purported claims than does her Original Complaint.  Indeed, the allegations in the Original Complaint were seemingly copied verbatim from Plaintiff's Charge. The purpose of discovery is to get additional details supporting/underlying the "short and plain statement" of the Plaintiff's claims that is contained in the Complaint.  By simply referring back to her general allegations in the Complaint (and the Charge), Plaintiff is not providing any response at all.  As such, she is failing to meet her discovery obligations.  I hereby request that Plaintiff amend her interrogatory answers to respond with specific details about the subject matter of the above-referenced interrogatories.

### Additional Deficiencies

In addition to the issues addressed above with respect to Plaintiff's numerous, improper objections, I would also direct your attention to the following interrogatory-specific deficiencies in Plaintiff's answers.

Interrogatory No. 9: Interrogatory No. 9 asks Plaintiff to "describe in detail any and all communications that you have had with employees or former employees of North Texas Health Care Laundry Cooperative d/b/a North Texas Health Care Laundry or its affiliates relating to the subject matter of this lawsuit."  Such Interrogatory further directs that Plaintiff's answer should include, without limitation, "*the subject matters of such communications*."  Plaintiff responded, without objection, to Interrogatory No. 9 as follows: "Plaintiff only spoke about this matter with Phil and Mary prior to obtaining legal counsel.  Plaintiff has not discussed this matter with any current or former employees of NTHCL."

First, with respect to Plaintiff's conversation with "Phil and Mary," Plaintiff's answer does not include any specifics as to what was discussed, that is, "the subject matter of such communication[]."  Second, there are allegations in Plaintiff's Complaint referencing "other employees of Defendant."  For example, Plaintiff alleges that "[i]t was well known to . . . *other employees* of Defendant that Mr. Hernandez used his power as general manager to seduce female employees to have sex with him."  Presumably, Plaintiff could only "know" what "was well

---

[6] *Heller*, 303 F.R.D. at 487 (quoting *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2684-JWL, 11-2685-JWL, & 11-2686-JWL, 2014 WL 545544, at *2 (D. Kan. Feb. 11, 2014)).
[7] *Heller*, 303 F.R.D. at 487.

Mr. Jay C. English
Mr. J. Scott Perry
December 1, 2015
Page 5

known" to other employees by having had some sort of communication with such employees. Yet, no such communications are described in response to Interrogatory No. 9. I hereby request that Plaintiff amend her answer to Interrogatory No. 9 to respond fully to such Interrogatory.

Interrogatory No. 13: In addition to the improper objections asserted by Plaintiff in response to Interrogatory No. 13 (as explained above), the minimal answer given by Plaintiff to such Interrogatory is also incomplete on its face. The only specific answer provided by Plaintiff to Interrogatory No. 13 is: "I *was told* that he [Mr. Hernandez] had a relationship with someone known as Kim at the workplace." Such response begs the question — *Who* allegedly told Plaintiff about such relationship? I hereby request that Plaintiff amend her answer to Interrogatory No. 13 to respond fully to such Interrogatory.

Interrogatory No. 19: In addition to the improper objections asserted by Plaintiff in response to Interrogatory No. 19 (as explained above), the minimal answer given by Plaintiff to such Interrogatory is also incomplete on its face. In part, the specific response provided by Plaintiff to Interrogatory No. 19 is: "Plaintiff further states that in *prior instances* at NTHCL, if a relationship were suspected by NTHCL, it would conduct an investigation." To what "prior instances" is Plaintiff referring? I hereby request that Plaintiff amend her answer to Interrogatory No. 19 to respond fully to such Interrogatory.

Interrogatory No. 20: In addition to the improper objections asserted by Plaintiff in response to Interrogatory No. 20 (as explained above), the minimal answer given by Plaintiff to such Interrogatory is also incomplete on its face. In particular, Plaintiff states that "[e]xact dates, times and locations are not recalled *but should be reflected in records*." Presumably, the "records" to which Plaintiff is referring are her medical/treatment records. Yet, as discussed more fully below, Plaintiff has *objected to producing such records* on the basis of "patient-physician privilege" and "mental health privilege." It should go without saying that Plaintiff cannot, on the one hand, direct us to "records" in response to an interrogatory, but then object to and refuse to produce such "records." I hereby request that Plaintiff amend her answer to Interrogatory No. 20 to respond fully to such Interrogatory without reference to any "records" and/or identify specifically and produce the "records" from which we may determine the answer to Interrogatory No. 20.

Interrogatory No. 25: Interrogatory No. 25 requests that Plaintiff "state the date on which you first hired any attorney to represent you in this matter, and identify each attorney who has represented you in this matter." Rather than providing the information requested, Plaintiff merely objected, including "to the extent that Defendant seeks information protected by the attorney-client privilege and/or work product doctrine." I do not believe that the date upon which counsel was engaged and/or the identity of counsel is information protected by any privilege. If you have any authority to the contrary, please provide it at once. Otherwise, I hereby request that Plaintiff withdraw her objections and respond fully to Interrogatory No. 25.

Mr. Jay C. English
Mr. J. Scott Perry
December 1, 2015
Page 6

### Plaintiff's Responses to Defendant's First Set of Requests for Production

Plaintiff's responses to the requests for production provide little, if any, information with respect to Plaintiff's documents that may be relevant to her alleged claims.  Not only are the responses deficient in many of the same ways as Plaintiff's interrogatory answers; but also, they also suffer from the following additional deficiencies.

### *"General" Objection*

For the great majority of the requests for production, Plaintiff asserted solely the following "General" objection: "Defendant has brought forth ninety (90) requests for production.  This is obviously brought with the intent to harass, be unduly burdensome, and cause unnecessary legal expenses for both Plaintiff and Defendant.  Defendant's counsel through its actions is seeking to impose substantial burden on the Plaintiff and harass Plaintiff simultaneously."  To the extent such "General" objection could be interpreted as setting forth even a potentially valid basis for objecting to any particular request for production (which is highly questionable), the use of "general" objections is prohibited.[8]  Accordingly, Plaintiff's "General" objection will not be considered.  I hereby request that Plaintiff withdraw her "General" objection and amend her requests for production responses accordingly.

### *Plaintiff's Refusal to State Whether, and to What Extent, Documents Exist*

For the great majority of the requests for production, Plaintiff simply responded ("[s]ubject to and without waiving" her "General" objection): "[A]ny responsive documents (*if they exist or existed in Plaintiff's control*) were delivered to Defendant prior to the bringing of this suit.  Also, see redundant copies attached."  Based on this equivocal response, it is wholly unclear whether any documents responsive to a number of the requests actually existed.

By way of example, in terms of her communications, Plaintiff *only* produced e-mail communications between herself and Mr. Hernandez.  The requests for production also specifically request communications between Plaintiff and Gary Dutchover (*see* Request Nos. 42, 43, 44, 45, 46, 47, 48, and 49) and between Plaintiff and Robin Brinkley Holmes (*see* Request Nos. 51, 52, 53, 54, 55, 56, 57, 58, and 59).  It would seem highly suspect that Plaintiff has no communications whatsoever between herself and her "husband" or between herself and her mother.  However, if it is Plaintiff's position that she, in fact, has no such documents, then she should expressly so state in response to the various requests for production.

Accordingly, I hereby request that Plaintiff amend her requests for production responses to state specifically with respect to each request whether responsive documents actually exist within her possession, custody, or control, and have therefore been produced, or whether no responsive documents actually exist.

---

[8] *See Heller*, 303 F.R.D. at 483.

Mr. Jay C. English
Mr. J. Scott Perry
December 1, 2015
Page 7

### *Plaintiff's Refusal to Sign Authorizations/Produce Medical Records*

The claims that Plaintiff is asserting in this lawsuit squarely put both her financial/employment matters and her mental health/treatment in issue. As such, there is simply no legitimate basis for Plaintiff's objections to and refusal to provide the requested authorizations/documents relevant to such matters (*see* Request Nos. 34, 68, 85, 86, 87, and 88). Courts have repeatedly held that medical records are relevant to claims of mental anguish (*e.g.*, intentional infliction of emotional distress).[9] The documents/records requested are discoverable, and Plaintiff cannot hide behind assertions of "privacy" or "privilege."

We would be willing to ensure the confidentiality of the requested documents/records by drafting an agreed protective order, if you wish. In any event, I hereby request that Plaintiff withdraw her objections, produce the requested documents, and sign the proffered authorizations without further delay.

### *Additional Deficiencies*

Request No. 23: Request No. 23 asked that Plaintiff produce her "retainer agreement with English Law Group." In addition to the improper "General" objection, Plaintiff asserted "relevance" and "attorney-client privilege" objections to this Request. As I am sure you are aware, a retainer agreement between a client and an attorney is not privileged. Moreover, as Plaintiff is seeking to recover her attorney's fees in this case, such agreement is clearly relevant.[10] I hereby request that Plaintiff withdraw her objections to Request No. 23 and produce the requested document.

Request No. 25: Request No. 25 asked that Plaintiff produce "all documents identified in [her] answers to Defendant's First Set of Interrogatories." In addition to the improper "General" objection, Plaintiff objected that such request is "vague and confusing as to what documents Plaintiff is to produce." I do not know how this Request could possibly be seen as "vague" or "confusing." I hereby request that Plaintiff withdraw her objection and produce all documents responsive to Request No. 25.

Request No. 9: Request No. 9 asked that Plaintiff produce "any newspaper or magazine articles, television video or any other media coverage that related in any way to *the subject matter of this lawsuit*." In response, Plaintiff simply "reassert[ed]" her "General" objection and stated "see attached." However, only two of the pages attached to Plaintiff's requests for production responses reflect media articles, and neither of these has anything to do with Plaintiff or her allegations in this case. Thus, it is unclear if these pages were attached in error and if any responsive documents actually exist with respect to Request No. 9. I hereby request that Plaintiff

---

[9] *See, e.g.*, *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005) (holding that medical records are relevant to claims of mental anguish); *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 657, 659 (D. Kan. 2004) (finding that discovery requests seeking plaintiff's medical and psychological records are held to be relevant to a plaintiff's claims for emotional damages).

[10] *See, e.g.*, *Borden, Inc. v. Valdez*, 773 S.W.2d 718, 720–21 (Tex. App.—Corpus Christi 1989, orig. proceeding) (recognizing that a plaintiff's fee agreement with his/her attorney, as well as any billing statements, are discoverable if the plaintiff is seeking attorneys' fees as a component of his/her damages).

Mr. Jay C. English
Mr. J. Scott Perry
December 1, 2015
Page 8

clarify her response to Request No. 9 and/or produce any documents that are actually responsive to such Request.

I certainly hope that a motion to compel will not be required for Plaintiff to correct the discovery deficiencies outlined above.  However, if Plaintiff has not remedied such deficiencies by close of business on Wednesday, December 8, 2015, we will have no choice but to bring these matters to the Court's attention.

I acknowledge that I had previously requested deposition dates in December.  However, when I did so, it was with the expectation that Plaintiff would provide adequate discovery responses.  In light of Plaintiff's failure to do so, it will no longer be possible to conduct depositions this month.  Please provide dates upon which Plaintiff would be available to be deposed in January 2016.

Finally, in Plaintiff's interrogatory answers, she expressly states that she is "common law married to Gary Dutchover."  In light of Mr. Dutchover's status as Plaintiff's husband, I believe it is incumbent upon Plaintiff to produce Mr. Dutchover for deposition, and that, in any event, it would be inappropriate for me to attempt to communicate with him directly.  Please provide dates in January 2016 for his deposition as well.

Please let me hear from you at once.

Very truly yours,

*Monte K. Hurst*

Monte K. Hurst

MKH:JRP:lb

449520

cc:     Mr. Aaron Parrish                          **Via e-mail: AParrish@englishpllc.com;**
        Legal Assistant                            **Via Telecopy: 972.733.1335**
        ENGLISH LAW GROUP, P.L.L.C
        7616 LBJ Freeway, Suite 401
        Dallas, Texas 75251

**APP 41**

✾ ✾ ✾ Communication Result Report ( Dec. 1, 2015  2:26PM) ✾ ✾ ✾

1) Hallett & Perrin, PC
2) 1445 Ross Ave, Suite 2400

Date/Time: Dec. 1. 2015  2:18PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|------|------|-------------|-------|--------|---------------|
| 1443 | Memory TX | 200✾9727331335 | P.  9 | OK | |

----------------------------------------------------------------------

Reason for error
E. 1) Hang up or line fail          E. 2) Busy
E. 3) No answer                     E. 4) No facsimile connection
E. 5) Exceeded max. E-mail size     E. 6) Destination does not support IP-Fax

# H P

Hallett & Perrin, P.C.

Attorneys and Counselors
1445 Ross Avenue, Suite 2400
Dallas, TX 75202
(214) 953-0053

**FAX COVER SHEET**

**December 1, 2015**

Client No.: 39248/1

**PLEASE DELIVER THE FOLLOWING PAGES TO:**

| | |
|---|---|
| Name: | Mr. Jay C. English |
| | Mr. J. Scott Perrin |
| | Mr. Aaron Parrish |
| Telecopier Phone: | 972.733.1335 |
| From: | **Monte K. Hurst** |
| Telephone No.: | 214.922.4111 |
| Fax No.: | 214.922.4142 |

**TOTAL NUMBER OF PAGES:  9    INCLUDING THIS COVER SHEET**
•Please call Telecommunicator if you do not receive total number of pages
or if transmission is not readable.

| Additional Message: |
|---|
| |

Confirmation Requested:    Yes  X     No____

The information contained in this facsimile message is privileged and confidential and is intended only for the use of the addressee. If the reader of this message is not the addressee, or the person responsible for delivery to the addressee, you are hereby notified that any dissemination, distribution or copying of the message is strictly prohibited. If you have received this message in error, please immediately notify us by telecopy and return the original message to us at the above address via the U.S. Postal Service. Thank you.

APP 42

**From:** aparrish@englishpllc.com [mailto:aparrish@englishpllc.com]
**Sent:** Tuesday, January 05, 2016 3:08 PM
**To:** Monte K. Hurst <Monte.Hurst@hallettperrin.com>
**Cc:** Scott Perry <Sperry@englishpllc.com>
**Subject:** Holmes v. NTHCL

Hi Monte,

Attached are additional documents responsive to Defendant's Request for Production.

Thanks,
Aaron

_____

**Aaron Parrish**
Legal Assistant to Mr. English
**English Law Group, PLLC.**
7616 LBJ Freeway, Suite 401
Dallas, Texas 75251
**(214) 528-4300**
aparrish@englishpllc.com
www.englishpllc.com

**APP 43**



1445 Ross Avenue
Suite 2400
Dallas, Texas 75202
www.hallettperrin.com

Monte K. Hurst
Board Certified, Labor and Employment Law
Texas Board of Legal Specialization
direct dial – 214.922.4111
fax – 214.922.4142
monte.hurst@hallettperrin.com

February 24, 2016

Mr. Jay C. English                                    **Via e-mail: JEnglish@englishpllc.com;**
ENGLISH LAW GROUP, P.L.L.C.                            **Via Telecopy: 972.733.1335**
7616 LBJ Freeway, Suite 401
Dallas, Texas 75251

Mr. J. Scott Perry                                    **Via e-mail: SPerry@englishpllc.com;**
ENGLISH LAW GROUP, P.L.L.C.                            **Via Telecopy: 972.733.1335**
7616 LBJ Freeway, Suite 401
Dallas, Texas 75251

> **Re:    Civil Action No. 3:15-CV-02117-L**
> **Our File No.: 39248/1**
> *Christina H. Holmes vs. North Texas Health Care Laundry*
> *Cooperative Association, d/b/a North Texas Health Care Laundry*

Dear Jay and Scott:

I am writing in response to Scott Perry's letter to me of February 18, 2016, which was written in response to my letter to you of February 17, 2016.

It is inconceivable to us that you could honestly believe that you have "supplemented discovery to address [our] complaints." In my seven-and-one-half-page letter to you of December 1, 2015, I set forth numerous deficiencies with respect to *all* of Plaintiff's discovery responses—her initial disclosures; her interrogatory answers; and her request for production responses. To date, the *only* response to my December 1, 2015 letter I have received was a January 5, 2016 e-mail message from your legal assistant attaching, without an explanation, "additional documents responsive to Defendant's Request for Production." Obviously, this e-mail message in no way addressed any of the deficiencies in Plaintiff's Initial Disclosures or her interrogatory answers, and it did not come close to addressing each issue previously raised with respect to Plaintiff's requests for production responses.

**APP 44**

Mr. Jay C. English
Mr. J. Scott Perry
February 24, 2016
Page 2

I will not reiterate in this letter all of the issues I addressed in my December 1, 2015 letter. But, I am attaching my December 1, 2015 letter to this letter, and demanding that you address these issues at once. In the event that you fail to address each and every deficiency raised in my December 1, 2015 letter by Wednesday, March 2, 2016, we will have no choice but to seek the Court's intervention.

You produced the following in Plaintiff's January 5, 2016 "supplementation:" (1) an almost-entirely redacted "Authority to Represent and Fee Agreement" between Christina Holmes and her lawyer; (2) executed authorization forms for the release of tax returns, medical records, and unemployment records pertaining to Ms. Holmes; (3) a report by Donna Campbell, Psy.D of a clinical interview and mental status examination of Ms. Holmes; (4) documents related to two orders for tests with STDTestExpress placed by Ms. Holmes; (5) a copy of Ms. Holmes' mortgage loan payment history dated November 2, 2015; and (6) copies of Ms. Holmes' BankAmericard statements from January 2013 through October 2015. Additional issues are raised by these documents/categories of documents.

If you have any authority supporting your almost complete redaction of the fee agreement, please provide forward it to this office at once. From our perspective, the fee agreement *in its entirety* is discoverable based on Ms. Holmes' claim for recovery of attorneys' fees. You must produce an unredacted copy of the fee agreement at once.

We still need for Ms. Holmes to execute a tax records authorization that would allow us to retrieve Ms. Holmes' tax records for the years 2015 and 2016. Please have Ms. Holmes execute the attached tax records authorization at once.

Based on Dr. Campbell's report, it would appear that Ms. Holmes has sought Social Security disability benefits. Please have Ms. Holmes execute the attached Social Security Administration Consent for Release of Information.

Please identify the request(s) for production for which you produced Ms. Holmes mortgage loan payment history.

Please identify the request(s) for production for which you produced Ms. Holmes' BankAmericard statements. Also, we note that the statements produced are incomplete. You only provided pages 1 and 3 of each four-page statement. Presumably, the original statements include information on the front and back, but only one side of each page was copied and produced. Please produce the complete statements at once.

Plaintiff's recently-filed expert designation fails to comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure. We cannot even identify who among these four individuals (if any) you are characterizing as a retained expert. Please identify at once who among these four healthcare providers (if any) you are characterizing as a retained expert.

**APP 45**

Mr. Jay C. English
Mr. J. Scott Perry
February 24, 2016
Page 3

For any retained expert, you were required to provide the following: a report conveying a statement of the expert's opinions; the facts or data considered by the expert in forming the opinions; any exhibits that will be used to summarize or support the opinions; the expert's qualifications (including a list of all publications authored in the previous 10 years); a list of all other cases over the past four years in which the expert testified at trial or by deposition; and a statement of the compensation to be paid for the study and testimony in the case.  And, for any expert you designated that you would argue has not been retained for this case, you must nevertheless disclose the subject matter on which the witness is expected to present evidence and a summary of the facts and opinions to which the witness is expected to testify.  Ms. Holmes' expert designation fails to comply with any of these requirements as well.

If you fail to properly supplement Plaintiff's expert designation by Wednesday, March 2, 2016, we will seek the Court's intervention to address the deficient expert designations as well.

At this time, I would reiterate our request that Christina Holmes meet with our retained expert, Lisa Clayton, M.D.  Since the persons you have designated as expert witnesses have already had the opportunity to meet with Ms. Holmes, it only be fair for you to allow Dr. Clayton to meet with Ms. Holmes as well.  In the event that she remains unwilling to meet with Dr. Clayton, Ms. Holmes' refusal to meet with Dr. Clayton will be identified in Dr. Clayton's expert report due next month.

You continue to take the position that Ms. Holmes and you have no obligation to arrange, or at least facilitate, the depositions of *her husband* and her mother, both of whom we understand *reside with Ms. Holmes*.  Instead, you have expressly instructed us to contact both of these individuals directly.  As if that were not preposterous enough, you do not even provide in Plaintiff's initial disclosures the contact information of Ms. Holmes' mother.  Please reconsider this last request from us for your assistance in scheduling the depositions of Gary Dutchover and Robin Holmes.  Regardless, you must provide Robin Holmes' contact information at once.

Please let us hear from you immediately.

Very truly yours,

*Monte K. Hurst*

Monte K. Hurst

MKH:lb
Attachments

456765

**APP 46**

※ ※ ※ Communication Result Report ( Dec. 1. 2015  2:26PM) ※ ※ ※

1) Hallett & Perrin, PC
2) 1445 Ross Ave, Suite 2400

Date/Time: Dec. 1. 2015  2:18PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 1443 | Memory TX | 200✽9727331335 | P.  9 | OK | |

---

Reason for error
    E. 1) Hang up or line fail
    E. 3) No answer
    E. 5) Exceeded max. E-mail size

    E. 2) Busy
    E. 4) No facsimile connection
    E. 6) Destination does not support IP-Fax

# H P

Hallett & Perrin, P.C.

Attorneys and Counselors
1445 Ross Avenue, Suite 2400
Dallas, TX 75202
(214) 953-0053

**FAX COVER SHEET**

**December 1, 2015**

Client No.: 39248/1

PLEASE DELIVER THE FOLLOWING PAGES TO:

Name:                  Mr. Jay C. English
                       Mr. J. Scott Perrin
                       Mr. Aaron Parrish
Telecopier Phone:      972.733.1335

From:                  **Monte K. Hurst**
Telephone No.:         214.922.4111
Fax No.:               214.922.4142

TOTAL NUMBER OF PAGES:  9     INCLUDING THIS COVER SHEET
•Please call Telecommunicator if you do not receive total number of pages
or if transmission is not readable.

| Additional Message: |
|---------------------|
|                     |

Confirmation Requested:    Yes   X    No____

The information contained in this facsimile message is privileged and confidential and is intended only for the use of the addressee. If the reader of this message is not the addressee, or the person responsible for delivery to the addressee, you are hereby notified that any dissemination, distribution or copying of the message is strictly prohibited. If you have received this message in error, please immediately notify us by telecopy and return the original message to us at the above address via the U.S. Postal Service. Thank you.

APP 47

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Dallas District Office

207 S. Houston Street, 3rd Floor
Dallas, TX  75202-4726
Dallas Status Line:  (866) 408-8075
Dallas Direct Dial:  (214) 253-2885
TTY (214) 253-2710
FAX (214) 253-2720

Dallas District Office
    San Antonio Field Office
    El Paso Area Office

December 24, 2014

**Mary Khan**
**Human Resources Manager**
**NORTH TEXAS HEALTH CARE LAUNDRY**
**1080 Post and Paddock Street**
**Grand Prairie, TX 75050**

Re:    EEOC Charge 450-2014-03615
       Christina Holmes vs. North Texas Healthcare Laundry Cooperative Association

Dear Ms. Khan:

Through an administrative oversight on the part of the Commission, the charge was not timely served to your organization.  Although we failed to timely serve the charge in compliance with Section 706(b) of Title VII of the Civil Rights Act of 1964, as amended, which states in part that the charge should be served to the employer within ten (10) days after filing of the charge.  Please be advised that the Commission intends to conduct an investigation of the charge.  Enclosed you will find a copy of the charge, notice of charge of discrimination and a questionnaire for your organization's response.

We regret any inconvenience and look forward to your cooperation in resolving the charge.

Sincerely,

*J. C. Christian*

J.C. Christian
Investigator

EEOC FORM 131 (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| **Mary Khan**<br>**Human Resources Manager**<br>**NORTH TEXAS HEALTH CARE LAUNDRY**<br>**1080 Post and Paddock Street**<br>**Grand Prairie, TX 75050** | **Christina H. Holmes** |

| THIS PERSON (check one or both) |
|---|
| [X] Claims To Be Aggrieved |
| [ ] Is Filing on Behalf of Other(s) |

| EEOC CHARGE NO. |
|---|
| **450-2014-03615** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)   [ ] The Equal Pay Act (EPA)   [ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)   [ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **23-JAN-15** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by  to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by **14-JAN-15**
   to   **Katherine S. Perez, ADR Coordinator, at (210) 281-2507**
   If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

**Sandra C. Taylor,**
**Intake Supervisor**

*EEOC Representative*

*Telephone*   **(214) 253-2877**

**Dallas District Office**
**207 S. Houston St.**
**3rd Floor**
**Dallas, TX 75202**
**Fax: (214) 253-2720**

Enclosure(s): [X] Copy of Charge

---

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] Race   [ ] Color   [X] Sex   [ ] Religion   [ ] National Origin   [ ] Age   [ ] Disability   [ ] Retaliation   [ ] Genetic Information   [ ] Other

**See enclosed copy of charge of discrimination.**

---

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **December 24, 2014** | **Janet V. Elizondo,**<br>**District Director** | |

**APP 49**

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | __ FEPA<br>_X_ EEOC | 450 - 2014 - 03615 |

|  Texas Workforce Commission – Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr. Ms. Mrs.)<br>Christina H. Holmes | Home Phone (Incl. Area Code)<br>214-796-7987 | Date of Birth<br>April 9, 1985 |
|---|---|---|
| Street Address<br>2351 Norwich Lane, Grand Prairie, Texas 75052 | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>North Texas Healthcare Laundry Cooperative Association ("NTHCL") | No. Employees, Members<br>300+ | Phone No. (Include Area Code)<br>469-916-1150 |
|---|---|---|
| Street Address<br>1080 Post and Paddock Street, Grand Prairie, Texas 75050 | City, State and ZIP Code | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| __ RACE  __ COLOR  _X_ SEX  __ RELIGION  __ NATIONAL ORIGIN | Earliest                Latest |
| __ RETALIATION  __ AGE  __ DISABILITY  __ OTHER (Specify below.) | __ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

1. Ms. Holmes started working for NTHCL on July 15, 2013.
2. Ms. Holmes is a Customer Service Representative for NTHCL.
3. In September 2013, NTHCL General Manager, David Hernandez, started making sexual advances towards Ms. Holmes.
4. Mr. Hernandez was not Ms. Holmes' direct supervisor; rather he was the "boss" of the entire company.
5. Ms. Holmes' direct supervisor was Willy Chavez.
6. Mr. Hernandez made Mr. Chavez's management of Ms. Holmes very difficult so that she would have to come to Mr. Hernandez more frequently for guidance.
7. In her day-to-day work, Ms. Holmes was forced to have to work very closely with Mr. Hernandez.
8. It was well known to Ms. Holmes and other employees at NTHCL that Mr. Hernandez used his power as general manager to seduce female employees to have sex with him.
9. Office knowledge was that Mr. Hernandez had a sexual relationship with another Customer Service Representative, Kim Dispagna.
10. Mr. Hernandez would tell Ms. Holmes things like "you're hot", "you're beautiful", and "I wanna do you".
11. Ms. Holmes would laugh off and try to avoid the many unwanted advances.
12. Ms. Holmes has been in a long-term relationship with a man that she refers to as her "husband" although they are not legally married.
13. Mr. Hernandez had been married for eighteen year and has six children.
14. Ms. Holmes had been sexually assaulted by her uncle when she was only seven years old.

**APP 50**

15. Although Ms. Holmes received limited counseling and therapy at the age of fourteen for her assault, the trauma was never fully resolved and was instead repressed.

16. Mr. Hernandez used his charm and manipulative behaviors to pressure Ms. Holmes into a sexual relationship with him.

17. Ms. Holmes had confided the details of her sexual assault to Mr. Hernandez.

18. Mr. Hernandez took this information about her prior sexual assault and used it to manipulate Ms. Holmes.

19. Ms. Holmes continued to tell Mr. Hernandez no to all of his advances.

20. In March 2014 Ms. Holmes eventually succumbed to the increasing pressure and started a sexual relationship with Mr. Hernandez.

21. The authority and power that Mr. Hernandez held over Ms. Holmes as her General Manager made for a less-than-consensual relationship.

22. Mr. Hernandez even went so far as to make up his own stories of having been sexually assaulted so as to get Ms. Holmes to engage in a sexual relationship with him.

23. Ms. Holmes would generally arrive in the office between 6:00am and 6:30am.

24. Mr. Hernandez would generally arrive at or around 9:00am.

25. After learning of Ms. Holmes very early arrival times to the office, Mr. Hernandez changed his work schedule so that he could be in the office alone with her.

26. The relationship started with kissing in Mr. Hernandez's office before coworkers would arrive.

27. On March 17, 2014 Mr. Hernandez and Ms. Holmes had sex for the first time.

28. Ms. Holmes was forcefully turned around, bent over Mr. Hernandez's desk, and penetrated from behind without a condom.

29. Ms. Holmes remained quiet from the shock she felt from being forced into this position.

30. Her boss had in effect just raped her.

31. On March 18, 2014, Mr. Hernandez informed Ms. Holmes that he had gotten a room at Spring Hill Suites and what the room number was.

32. Ms. Holmes felt forced and obligated by her position with the company to meet Mr. Hernandez at the hotel.

33. Mr. Hernandez had put roses and rose petals all over the room furthering the pressure for Ms. Holmes to continue the forced sexual relationship with him.

34. At that time, Mr. Hernandez started kissing her.

35. Then to further his control of the situation Mr. Hernandez grabbed Ms. Holmes by the hair and started removing her clothes.

36. Ms. Holmes was very scared of Mr. Hernandez and what he may do having just been sexually assaulted the day before by him.

37. Mr. Hernandez proceeded to again have forced unprotected sex with Ms. Holmes.

38. The cost of the hotel was expensed by Mr. Hernandez to NTHCL.

39. On March 19, 2014 Ms. Holmes had meetings in Round Rock, Texas and Temple, Texas to meet with new clients.

40. Mr. Hernandez drove to Round Rock and rented a hotel room at the hotel across the street from Ms. Holmes' hotel.

41. Mr. Hernandez picked up Ms. Holmes from her hotel room and took her back to his room.

42. Once in the room, Mr. Hernandez forced Ms. Holmes to drink vodka with him.

43. Ms. Holmes does not drink often and was very quickly under the influence of the alcohol.

44. Mr. Hernandez again took advantage of Ms. Holmes' vulnerability and had forced unprotected sex with her.

45. After he was finished, Mr. Hernandez took Ms. Holmes back to her hotel room.

46. At a meeting the next morning with other employees, Mr. Hernandez organized duties for them to go and visit certain locations of the new client.

47. Mr. Hernandez immediately tells Ms. Holmes to follow him back to his room.

48. Ms. Holmes was forced again to have unprotected sex with Mr. Hernandez.

49. On March 25, 2014 Ms. Holmes was instructed by Mr. Hernandez to go with him to a new hospital in Brownwood, Texas.

50. The two of them had their meeting with the client and on the way back to Grand Prairie, Mr. Hernandez stopped to get a motel room for them.

51. Mr. Hernandez proceeded to again have forced unprotected sex with Ms. Holmes.

52. On March 26, 2014 Ms. Holmes was going to a meeting at Baylor University Medical Center and Mr. Hernandez forced her to take him with.

53. In the parking garage, Mr. Hernandez started kissing Ms. Holmes.

54. On April 1, 2014 Ms. Holmes attended a meeting in Temple, Texas and Mr. Hernandez again attended.

55. Before leaving for the meeting, Mr. Hernandez called Ms. Holmes and told her that he had a flat tire and needed her to come get him.

56. Mr. Hernandez started kissing Ms. Holmes again.

57. On April 11, 2014 Mr. Hernandez set up a meeting in Grapevine then he set up a fake meeting in Denton.

58. Because of this fake meeting, Ms. Holmes was unable to be at her mother's side during and after a surgery.

59. Mr. Hernandez told Ms. Holmes that the reason for the fake meeting was that it was her birthday that week and he wanted to do something special for her.

60. Mr. Hernandez took Ms. Holmes to lunch in Lewisville.

61. After lunch, Mr. Hernandez took her back to his home and had unprotected sex with Ms. Holmes yet again.

62. After Mr. Hernandez finished having sex, he took Ms. Holmes back to her car.

63. On April 25th, Ms. Holmes has a scheduled training with new employee at UT Southwestern – Zale Campus.

64. Mr. Hernandez calls Ms. Holmes and tells her that she needs to finish the training quickly so that she can meet him for an important meeting at HEB Hospital.

65. Ms. Holmes proceeds to HEB and is met by Mr. Hernandez in the back of the parking lot as she was instructed.

66. She gets into Mr. Hernandez's car to ride with him to a closer parking spot, or so she thought.

67. Mr. Hernandez proceeded to drive Ms. Holmes to a nearby apartment.

68. The apartment ended up being that of Kim Dispagna that Mr. Hernandez had been given access and a set of keys to.

69. He again started making out with Ms. Holmes.

70. In an effort to stop Mr. Hernandez, Ms. Holmes informed him that she cannot have sex because she is on her period.

71. Mr. Hernandez was at a loss and was quiet clearly upset.

72. Mr. Hernandez then lay down on the couch with Ms. Holmes and started kissing her.

73. At this point Mr. Hernandez pulled down Ms. Holmes' pants and started performing oral sex on her.

74. Then he removed her tampon and forcefully had unprotected sex with Ms. Holmes despite her efforts to get him to stop.

75. The relationship between Ms. Holmes and Mr. Hernandez quickly ended after this.

76. Ms. Holmes' husband suspected the activities of Mr. Hernandez and hired an investigator to find out for sure.

77. Ms. Holmes' husband contacted Mr. Hernandez letting him know that he knew about the sex and that the relationship was over.

78. Because of the actions of Mr. Hernandez, Ms. Holmes is again suffering from the sexual assault from her childhood and has been clinically diagnosed with Post Traumatic Stress Disorder ("PTSD").

79. Ms. Holmes' psychotherapist believes that she will now need two to three years of intense psychotherapy to help heal her emotional scars, build self-esteem, develop healthy boundaries in relationships, and bring healing to her current relationship with her husband.

AARON K. PARRISH
Notary Public, State of Texas
My Commission Expires
July 03, 2018

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements*  |
| I declare under penalty of perjury that the above is true and correct.<br><br>8-1-2014<br>Date        *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)*   8 / 1 / 14 |

# INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14   Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 207(f) of GINA, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

**APP 54**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Dallas District Office**

207 S. Houston Street, 3rd Floor
Dallas, TX 75202-4726
Toll Free: 866-408-8075
Potential Charge Inquiries: 800-669-4000
TTY (214) 253-2710
FAX (214) 253-2720
www.eeoc.gov

Dallas District Office
San Antonio Field Office
El Paso Area Office

## You have been requested to provide a position statement in response to the enclosed charge...

**What should your position statement include?**

At a minimum, it should include **specific, factual** responses to **every** allegation of the charge. The position statement should clearly explain the respondent's version of the facts and identify the specific documents and witnesses supporting the position. It tells your side of the story and provides supportive information. A well drafted position statement can help us accelerate the investigation and limit requests for additional information and/or on-site investigation. Please keep the following points in mind as you prepare your response to the charge:

1.  Address each alleged discriminatory act and your position regarding it and provide copies of documents supporting your position and/or version of the events.

2.  Provide a description of the company; include legal name and address, name, address, title and telephone number of the person responsible for responding to the charge, primary function of the business, and the number of employees. A staffing or organizational chart is also useful in helping to focus the investigation.

3.  Provide copies or descriptions of any applicable practices, policies or procedures, *including a copy of your anti-harassment policy and information about how and when the policy is made known to employees.*

4.  Identify any other individuals who have been similarly affected by these practices, policies or procedures; describe the circumstances in which the practices, policies, or procedures have been applied.

5.  Explain why individuals who were in a similar situation to the Charging Party were not similarly affected.

6.  Identify official(s) who made decisions or took action relating to the matter(s) raised in the charge, and explain the rationale for their decision/action.

7.  Be specific about date(s), action(s) and location(s) applicable to this case.

8.  Provide copies of internal investigations of the alleged incidents or grievance/complaint disposition summaries.

9.  **Inform us if the matter has been resolved or if you are amenable to exploring resolution. If the parties are willing to work in good faith toward a resolution, with our concurrence the submission of the position statement can be delayed. Our staff can assist in working toward a resolution. If you believe the matter can be resolved informally, please tell us and, if possible, indicate your proposal for resolution. We encourage you to consider trying our free, confidential, voluntary mediation program to resolve the dispute.**

**Thank you!**

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Dallas District Office

207 S. Houston Street, 3rd Floor
Dallas, TX 75202-4726
Toll Free: (866) 408-8075
TTY (800) 669-6820
Investigation Fax (214) 253-2720
Mediation Fax (214) 253-2899
http://www.eeoc.gov

Dallas District Office
San Antonio Field Office
El Paso Area Office

## RESPONDENT
## INVITATION TO MEDIATE

DATE: 12/24/14          CHARGE NUMBER: 450-2014-03615

The person who filed the above-captioned charge, referred to as the Charging Party, has alleged discrimination by your company or organization. The Equal Employment Opportunity Commission (EEOC) has determined that this charge is eligible for mediation. * Please go to EEOC's website at www.eeoc.gov and view the 14-minute informational video, "EEOC's Ten Reasons To Mediate", and hear how medication can work for you. We would like for you to try and benefit from mediation!

Return this INVITATION TO MEDIATE to our Mediation Staff within **20 days** to the address above or the fax number below.

*Please check one of the following options and fill out your contact information in the box below.

**OPTION #1:** _____ **YES, WE WILL PARTICIPATE IN EEOC MEDIATION**
(if you agree to mediate, please return this form and also forms 2 & 3)

**OPTION # 2:** _____ **WE WOULD LIKE ADDITIONAL INFORMATION ABOUT MEDIATION**

**Please complete the box regardless of the option selected:**

Name: _____ Title: _____

Address: _____ City/State/Zip: _____

Phone: _____ Fax Number: _____

Email: _____

*If you have an attorney representing your organization in this matter, please provide the following information:*

Representative Name: _____ Phone: _____

Representative Email : _____

- *Please ensure the attorney representing your organization faxes a letter of representation to us.*

# FAX: (214) 253-2899

* Steps to view video:
(1) Go to www.eeoc.gov
(2) at the bottom of the main webpage under "Employees & Applicants" and the subset "Filing a Charge" select "Mediation"
(3) under "Learn More About Mediation" select "EEOC's Mediation Program"
(4) select "EEOC's Ten Reasons To Mediate"

# EEOC MEDIATION -- YOUR PARTNER IN WORKPLACE SOLUTIONS

### *WHY SHOULD WE TRY MEDIATION?*
- Mediation can save everyone time, money and angst – there is no fault finding.
- You will not have to prepare a position statement for EEOC if mediation is successful.
- The mediation provides an opportunity to quickly resolve the complaint.
- The mediators are highly skilled, neutral professionals trained to help draft creative and flexible settlement options that address the specific needs of the participants.
- The mediators are available to arrange and conduct mediations where all the parties are located for convenience, even in small towns, suburbs or outlying areas.
- Although some cases are resolved by financial settlements, many other charges are resolved without monetary cost.
- A core principle of mediation is confidentiality!  The Mediation Program is strictly separated from the investigative and litigation functions at EEOC.
- There is not a cost to either party for the mediation.

### *IMPRESSIVE STATISTICS:*
- For fiscal year 2012, (October 2011 through September 2012), the EEOC mediation program mediated almost 11,000 charges nationwide with a 77% successful resolution rate.
- In 2012, the EEOC conducted a nationwide survey of all mediation participants who utilized EEOC's mediation program. The survey indicated 98% of employers and employer representatives would use the EEOC's mediation program again in the future, regardless of the outcome of the charge they mediated at the time of the survey.

### *WHAT HAPPENS IF WE DECIDE NOT TO MEDIATE?*
- The charge will be returned to EEOC's Enforcement/Legal staff for investigation or other action. Investigations can consist of onsite visits by EEOC staff to review records and interview mangers/employees.  Information is also obtained through written questions and requests for documents.  The EEOC also has broad subpoena power to obtain documents and testimony.

### *WHAT HAPPENS IF WE GO TO MEDIATION AND CANNOT COME TO AN AGREEMENT?*
- All discussions and documents relating to the mediation are confidential and are NEVER disclosed to other EEOC staff.
- The charge will be returned to EEOC's Enforcement/Legal staff to conduct the investigation or for further action, and may result in any of the following:  a discrimination finding, litigation, settlement or dismissal.

### *DO WE NEED AN ATTORNEY TO PARTICIPATE IN MEDIATION?*
- No. Either party may be represented by an attorney if they choose, but it is not required.  The parties are responsible for all attorney's fees incurred.

### *OTHER QUESTIONS?*
- You may contact Rosemary Walker, Mediation Unit Program Assistant, at (214) 253-2892
  Also, see the enclosed "MEDIATION…… TRY IT, YOU'LL LIKE IT!!!"  fact sheet!

# M E D I A T I O N . . . T R Y   I T,   Y O U ' L L   L I K E   I T ! ! ! !

The U.S. Equal Employment Opportunity Commission (EEOC) offers free, voluntary, risk-free mediation to assist employers and individuals in resolving employment discrimination charges filed with EEOC.  Mediation represents an effective, often more positive and results-oriented alternative to traditional charge resolution.  Under the traditional procedures for resolving a charge the parties are asked to submit evidence in support of their respective positions for a final determination by EEOC.  The traditional process has worked over the years to help ensure equal employment opportunity, but many enlightened professionals see mediation as a better alternative to address rapidly changing demographics and business needs in the increasingly demanding and competitive global economy.  Mediation can offer many advantages over the traditional charge resolution approach.  An independent study involving employers and charging parties who participated in EEOC's mediation program liked the process and would use it again!

Once a charge has been filed with EEOC and served on the employer, EEOC offers to provide free mediation services.  If both the charging party and the employer are willing, EEOC arranges to provide a skilled mediator to assist the parties in trying to resolve the charge with terms the parties can live with and perhaps even embrace.  Mediation usually can be arranged to take place within a few days of the parties' agreement to participate, as compared to the often many months traditional investigation can take.  As well, the mediation session can be arranged to take place in the area where all the parties are located for the convenience of the parties. Employers and individuals who agree to try mediation can save valuable time,  legal and other expenses associated with traditional investigation and charge processing.  Little or no advance preparation or "investigation" by the employer or individual is needed.  Instead, they work with a skilled, neutral mediator who can help them explore solutions to a problem that may look different to each of them.  Usually the mediation session can be completed quickly and both parties can leave at the end of the day with their dispute resolved, ready to move on in a more positive and productive way!

Mediation affords a comfortable setting that encourages both parties to openly work together to generate ideas that may resolve their dispute.  Because mediation is confidential and the information shared during the process is never disclosed outside the mediation, the parties generally feel more free to explore possible resolutions with greater creativity and candor than is typically associated with more traditional means of charge investigation.

**Questions/concerns?  Here are some common questions and some things to think about.......**

**"I prefer to respond to the charge by sending a position statement or other information to EEOC like I've always done in the past.  I've never been found "guilty" of a violation, so why should I change now and try mediation?"**

> *Mediation offers an opportunity for the employer and employee to work directly with a skilled, neutral mediator, in a safe environment, to explore creative and effective resolutions to a dispute that is affecting everyone involved, often in ways and with cost that are not readily apparent.  A charge of employment discrimination represents a symptom of a work place problem that may or may not be the result of unlawful discrimination.  In any event, there is a problem that is affecting the organization.  If the charge is dismissed with the submission of a position statement or other information to EEOC, the symptom may temporarily disappear but the problem likely remains to resurface in other ways.  The problem almost always has harmful effects on an employer's productivity and viability.  It can affect the workforce and limit the freedom to compete in the workplace--an important competition that ensures opportunity and keeps our economy strong.  Important learning can take place in  mediation for everyone involved, even if the charge at issue is not resolved.*

APP 58

**"If my employees think I am willing to try mediation, it will just encourage them to file more charges. I don't want to encourage this. Besides, by agreeing to mediate I am sending the wrong message that I have done something wrong or that I have decided to pay money or do something to "fix" an employee complaint that has no merit from my perspective."**

*There is no evidence to suggest that employers who use mediation experience more complaints of employment discrimination. To the contrary, many organizations that use mediation experience a decline in such disputes. This may be because mediation often facilitates important learning about what is happening in the workplace. This learning can evolve into important changes over time which benefits everyone. Moreover, disputes which are resolved via mediation are much less likely (almost never!) to evolve into future charges of unlawful retaliation.*

*By agreeing to try mediation, you have not agreed to pay or "fix" anything. It is not an admission of fault or an up-front agreement to resolve the dispute. All that is required for mediation is that the parties come with a mind open to the possibility of resolving the dispute in a way that makes sense for them. You don't have to agree to do anything to resolve the dispute that makes you uncomfortable or that you believe is wrong. The mediator assists in identifying possible resolutions, but the parties are in control and cannot be forced to agree to anything contrary to their respective interests. If the charge cannot be resolved in the mediation session, EEOC will move it back to the investigation track. Nothing that happened in the mediation will be disclosed to any EEOC staff involved in the investigation. Not even the EEOC district director will know what happened in mediation. EEOC knows that a solid firewall between mediation and EEOC's investigation/litigation activities that guarantees confidentiality is important to the credibility and success of the agency's mission.*

**"I know that EEOC uses some it its own staff as mediators and that it also uses external contract mediators and other mediators from outside the agency. I think EEOC staff are biased and I don't trust them to help me in mediation."**

*EEOC uses a variety of internal and external mediators to ensure the very best service to the public. EEOC's internal staff mediators are specifically trained and experienced in mediation techniques. They are in no way involved in the intake, investigation or litigation of any charge of employment discrimination filed with EEOC. Are EEOC mediators biased because they work for EEOC? We don't think so! Remember, more than 95% of the employers who participated in our mediation program liked the service that we provided and would use it again. That doesn't sound like there was any bias. More importantly, the most significant safeguard in any mediation is that the parties are in control of the process and they decide what works for them. A mediator cannot impose terms on them. You decide.*

**Want more information about mediation? There is no downside or risk! Call us at (214) 253-2892. We look forward to hearing from you!**

**EEOC Dallas District Office, San Antonio Field Office and El Paso Area Office / www.eeoc.gov**

# Form #2

## AGREEMENT TO MEDIATE

**CHARGE NO.:** _____

This is an agreement by the parties to participate in a mediation in the above referenced charge. The parties understand that mediation is a voluntary process, which may be terminated at any time.

The parties and, if they desire, their representatives and/or attorneys, are invited to attend a mediation session.  No one else may attend without the consent of the mediator(s).

The mediator(s) will not function as the representative of either party.  However, the mediator(s) may assist the parties in crafting a settlement agreement.  Each party acknowledges being advised of their option to seek independent legal review prior to signing any settlement agreement.

The parties acknowledge that the mediator(s) possesses the discretion to terminate the mediation at any time if any impasse occurs or either party or the mediator deems the case inappropriate for mediation.

The parties recognize the mediation is a confidential process and agree to abide by the terms of the attached Confidentiality Agreement.

The parties acknowledge that if a settlement is reached as a result of the mediation, the assigned mediator(s) is required to report to EEOC any benefits received.  This information is reported only for purposes of providing aggregate data to the EEOC for Mediation program evaluation purposes, and the individual terms of the agreement will not be disclosed to the public.

_____     _____
CHARGING PARTY              DATE        RESPONDENT                 DATE

_____     _____
CHARGING PARTY              DATE        RESPONDENT                 DATE
REPRESENTATIVE                          REPRESENTATIVE

## ** *RETURN THIS FORM IF YOU AGREED TO MEDIATE* **

# Form #3

## CONFIDENTIALITY AGREEMENT

**CHARGE NO. :** _____

1.   The parties agree to participate voluntarily in mediation in an effort to resolve the charge(s) filed with the EEOC.

2.   The parties agree that all matters discussed during the mediation are confidential, unless otherwise discoverable and cannot be used as evidence in any subsequent administrative or judicial proceeding. Confidentiality, however, will not extend to threats of imminent physical harm or incidents of actual violence that occur during the mediation.

3.   Any communications between the ADR coordinator and the mediator(s) and/or the parties are considered dispute resolution communications with a neutral and will be kept confidential.

4.   The parties agree not to subpoena the mediator(s) or compel the mediator(s) to produce any documents provided by a party in any pending or future administrative of judicial proceeding.  The mediator(s) will not voluntarily testify on behalf of a party in any pending or future administrative or judicial proceeding.  The parties further agree that the mediator(s) will be held harmless for any claim arising from the mediation process.

5.   Mediation sessions will not be tape-recorded or transcribed by the EEOC, the mediator or any of the participants.  All information or materials provided or created by the mediator including all notes, records, or documents generated during the course of the mediation shall be destroyed by the mediator after conclusion of the mediation.  Parties or their representatives are not prohibited from retaining their own notes.  However, the EEOC will not maintain any such notes or records as part of its record keeping procedures.

6.   If a settlement is reached by all the parties, the agreement shall be reduced to writing and when signed shall be binding upon all parties to the agreement.  If the charge(s) is not resolved through mediation, it is understood by the parties that the charge(s) will be transferred to the investigative unit for further processing.


_____   _____        _____   _____
CHARGING PARTY                    DATE            RESPONDENT                        DATE


_____   _____        _____   _____
CHARGING PARTY                    DATE            RESPONDENT                        DATE
REPRESENTATIVE                                    REPRESENTATIVE


## ** *RETURN THIS FORM IF YOU AGREED TO MEDIATE***

## AUTHORITY TO REPRESENT AND FEE AGREEMENT

This Authority to represent and Fee Agreement, entered into by and between Christina Holmes Dutchover ("Client" herein) and English & Associates, PLLC. ("Attorneys" herein), is as follows:

1.    <u>EMPLOYMENT ON CLAIM</u>:    Client hereby employs Attorneys to represent Client in the investigation, evaluation and prosecution to settlement or judgment of all claims which Client has or may have against **North Texas Healthcare Laundry**.   The Attorneys represent you in this case only.   The Attorneys have no duty to represent you in any matters other than this case including, but not limited to, claims that could be brought by or against you in any other matter.

Redacted

Redacted

AUTHORITY TO REPRESENT AND FEE AGREEMENT - Page 2

Redacted

APP 64

Redacted

AUTHORITY TO REPRESENT AND FEE AGREEMENT - Page 4

APP 65

Redacted

Redacted

*Redacted*

AUTHORITY TO REPRESENT AND FEE AGREEMENT - Page 7

APP 68

Redacted

SIGNED this

_Chrissy Holmes_
Christina Holmes Dutchover

ACCEPTED th                                    014 by English & Associates, PLLC

Jay C. English

AUTHORITY TO REPRESENT AND FEE AGREEMENT - Page 8

APP 69