IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTINA HOLMES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-2117-L |
| | § | |
| NORTH TEXAS HEALTH CARE | § | |
| LAUNDRY COOPERATIVE | § | |
| ASSOCIATION d/b/a NORTH TEXAS | § | |
| HEALTH CARE LAUNDRY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant North Texas Health Care Laundry Cooperative Association d/b/a North Texas Health Care Laundry ("NTHCL" or "Defendant") has filed a Motion to Compel Compliance with the Subpoena Duces Tecum for Plaintiff's Records from Gary Kindley, LPC. *See* Dkt. No. 57 (the "MTC").

United States District Judge Sam A. Lindsay referred the motion to the undersigned United States magistrate judge for determination. *See* Dkt. No. 59.

Plaintiff Christina Holmes ("Holmes" or "Plaintiff") filed a response, *see* Dkt. No. 63, and NTHCL filed a reply, *see* Dkt. No. 64. Third-party Gary Kindley, LPC, the target of the Federal Rule of Civil Procedure 45 subpoena at issue, has not appeared or responded.

The Court heard oral argument on the MTC on October 17, 2016. *See* Dkt. No. 65.

-1-

For the reasons explained below, the Court GRANTS in part and DENIES in part NTHCL's MTC [Dkt. No. 57].

## Background

Plaintiff Christina Holmes sued her former employer, Defendant North Texas Health Care Laundry, for workplace sexual harassment and sex discrimination as well as several state law causes of action, including intentional infliction of mental distress, and seeks recovery of various types of damages, including mental anguish and emotional distress. *See* Dkt. No. 1.

In the MTC, NTHCL explains that, "[i]n her initial disclosures, Holmes identified [Dr.] Gary Kindley, LPC as her treating healthcare provider who is likely to have discoverable information that she may use to support her claims in this case" and that "NTHCL engaged Records Deposition Service of Texas [] to secure from [Dr.] Kindley the production of all records pertaining to Holmes." Dkt. No. 57 at 2. NTHCL reports that, "[o]n April 15, 2016, NTHCL received 31 pages of records from [Dr.] Kindley" but that "10 of the 31 pages contain redactions." *Id.* (footnotes omitted).

NTHCL further explains:

[Dr.] Kindley has provided counseling services to Holmes since May 2014, shortly after the conclusion of the affair that Holmes would now claim was non-consensual. NTHCL properly served on [Dr.] Kindley a subpoena and an authorization to release Holmes' complete file kept by him. On April 12, 2016, [Dr.] Kindley executed an affidavit testifying that the records that he was providing "are kept in the regular course of business" and the records "are the originals or exact copies of the originals and nothing has been removed from the original file before making these true and correct copies." However, [Dr.] Kindley's records contain numerous redactions of information that relate to Holmes' relationship with Gary

Dutchover, who Holmes conveniently now claims was her common-law husband at the time.

*Id.* at 3-4 (footnotes omitted). And, NTHCL explains, "Holmes also executed an authorization to disclose protected health information in compliance with the Health Insurance Portability and Accountability Act ('HIPAA')." *Id.* at 3 n.3.

NTHCL asserts that "[Dr.] Kindley's complete file is relevant to the claims that Holmes has put at issue in this lawsuit and NTHCL's ability to investigate and prepare its defense" and that "NTHCL would enter into a protective order to alleviate any concerns that records produced pursuant to the subpoena at issue remain confidential and referenced only in this litigation." *Id.* at 2. According to NTHCL, "[n]ot only is NTHCL entitled to the complete file under the subpoena and authorization; but also, the complete file is highly relevant to the claims that Holmes has placed at issue in this lawsuit. In fact, [Dr.] Kindley has provided two separate Assessment Summaries to Holmes' counsel regarding her emotional trauma and need for extensive counseling." *Id.* at 4.

NTHCL notes that "Holmes alleges that NTHCL is liable for intentional infliction of mental distress and seeks significant damages for mental anguish" and that "Holmes also places the alleged damage caused to her relationship with Mr. Dutchover at the center of her complaint." *Id.* As such, "[i]nformation from [Dr.] Kindley pertaining to Holmes' relationship with Mr. Dutchover directly relates to the facts at issue and the damages alleged by Holmes against NTHCL." *Id.*

Accordingly, NTHCL asks the Court to order Dr. Kindley to produce unaltered copies of his entire file pertaining to Holmes. *See id.*

Holmes responds that Dr. Kindley "is a licensed professional counselor in the State of Texas identified by Plaintiff as a non-retained expert who provided professional counseling services to Plaintiff" and that, "[a]s a licensed professional counselor, Kindley is obligated to protect mental health records and confidential information." Dkt. No. 63 at 1. Holmes submits an affidavit from Dr. Kindley "to the effect that he produced all records pertaining to Christina Holmes with the exception of portions of the records which identify other persons such as family members from whom Gary Kindley does not have a medical authorization or other consent to identify." *Id.* at 1-2.

Specifically, Dr. Kindley's affidavit states that, "[a]s the professional counselor for Christina Holmes, I responded to a subpoena duces tecum served by Defendant by providing all of the records I had on Ms. Homes with redactions of family members' names and information. The redactions were necessary in my opinion because I did not have authorization or consent to identify or release such protected information about the family members. Based upon my training and experience, and in concurrence with subsequent consultation of an attorney specializing in Texas and Federal counseling law, I believe the identity and information disclosed to me of these family members contained within Ms. Holmes' privileged mental health records are protected by the law and that my disclosure of their identities and information would be a violation of applicable law." *Id.* at 5-6.

-4-

According to Holmes, "Kindley's concern is that disclosure of the identities and information of other persons mentioned in the records of Christina Holmes may violate Section 181.151 and/or Section 611.005 of the Texas Health and Safety Code and/or [HIPAA], 42 USC § 1320d-5"; "[p]enalties for violation of the Texas law include fines, probation or suspension of the violator's license to practice"; "Kindley's concern is therefore legitimate"; and "Defendant has not shown a need substantial enough to invade the statutory protections afforded such confidential mental health records." *Id.* at 2. Holmes explains that "Defendant has in fact already deposed the only two family members identified by Plaintiff as persons with knowledge of relevant facts." *Id.*

Holmes asks the Court to "uphold the protections provided by statute for confidential mental health records" and deny the MTC and that, "if the Court is inclined to grant the [MTC], the Court conduct an *in camera* review of the materials before any dissemination to Defendant." *Id.*

In reply, NTHCL contends that, "[a]lthough she previously signed an authorization to allow NTHCL to obtain all of her records from her healthcare providers,[Holmes] now argues that her counselor, Gary Kindley, LPC, who she had seen for treatment for the alleged conditions she claims were caused by NTHCL, was justified in redacting portions of those records." Dkt. No. 64 at 1. NTHCL explains that it "does not know, and could not know, what information [Dr.] Kindley has chosen to redact in the records" but "Holmes contends that those portions redacted by [Dr.] Kindley 'identify other persons such as family members' from whom her counselor does not have a medical authorization or other consent to identify." *Id.* at 1-2.

According to NTHCL, "portions of [Dr.] Kindley's records that he did not redact already identify and provide information about other persons," and, "if Holmes and [Dr.] Kindley are allowed to hide relevant information under the guise of protecting non-parties, NTHCL would be at a distinct disadvantage, as Holmes and her counselor both seemingly know exactly what information has been redacted from the records at issue." *Id.* at 2. NTHCL asserts that "[t]he entirety of Holmes' mental health records – especially what she told [Dr.] Kindley about her relationships with her boyfriend (Gary Dutchover) and other non-parties – are crucial to NTHCL's defense of this matter," where "Holmes asserts claims of sexual harassment, retaliation, and negligence against NTHCL, and seeks mental anguish damages from NTHCL, based on her affair with David Hernandez, the former general manager of NTHCL's facility," and "also claims that NTHCL's actions caused damage to her relationship with Mr. Dutchover." *Id.* at 3. "NTHCL intends to show that Holmes voluntarily engaged in a physical relationship with Mr. Hernandez, in whole or in part based on the tenuous relationship between herself and Mr. Dutchover, and that any mental anguish from which Holmes has suffered has been caused by Mr. Dutchover – not NTHCL or Mr. Hernandez." *Id.*

NTHCL contends that "Holmes would use [Dr.] Kindley's records of their counseling sessions to support her claims; however, she now also attempts to shield the details underlying those summaries by redacting information regarding her relationships with other people under the guise that it would reveal their identities." *Id.* NTHCL argues that, "[o]nce Holmes makes a claim for mental anguish, then she

puts her mental state – before and after her affair with Mr. Hernandez – in play" and that "NTHCL is entitled to explore Holmes' previous and current relationships – romantic or otherwise – in its defense, and [Dr.] Kindley's records are directly relevant to those issues." *Id.* at 3-4.

And, NTHCL asserts, "none of the laws Holmes cites overcomes the fact that she has already authorized the full disclosure of her records with [Dr.] Kindley, which is expressly permitted under Chapter 611 of the Texas Health and Safety Code, as well as [HIPAA], 45 C.F.R. § 164.508. In fact, the Texas Health and Safety Code repeatedly reinforces the idea that a patient's records may be fully disclosed with no provisions regarding the redaction of non-patients' identities" since "[t]he Code's main focus is the protection of the patient's information." *Id.* (emphasis removed).

## Legal Standards

"Federal Rule of Civil Procedure 45 'explicitly contemplates the use of subpoenas in relation to non-parties' and governs subpoenas served on a third party, such as Gary Kindley, PLC], as well as motions to quash or modify or to compel compliance with such a subpoena." *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 42 (N.D. Tex. 2015) (quoting *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009)).

Under Rule 45, "[a] subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED.

R. Civ. P. 45(c)(2)(A); *see also* Fed. R. Civ. P. 45(a)(1)(C) ("A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises ... may be set out in a separate subpoena."). Rule 45(a)(1)(C) further provides that "[a] subpoena may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 45(a)(1)(C).

Rule 45(d)(2)(B) requires that "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested" – and that "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). "If an objection is made, the following rules apply: (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection. (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B).

NTHCL properly filed its motion to compel in this Court, which, as required by Rule 45(d)(2), is the court in the district where compliance with the subpoena is required. *See* Dkt. No. 58 at APP8.

"When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil

Procedure] 26(b)(1)." *Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998). Rule 26(b)(1) has been amended, effective December 1, 2015, to provide that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

As amended effective December 1, 2015, Federal Rule of Civil Procedure 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified

documents or information in sealed envelopes, to be opened as the court directs." FED. R. CIV. P. 26(c)(1).

"[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). And the United States Court of Appeals for the Fifth Circuit recently explained that "[t]he federal courts have superimposed a somewhat demanding balancing of interests approach to the Rule. Under the balancing standard, the district judge must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party. Courts also weigh relevant public interests in this analysis." *Cazorla v. Koch Foods of Mississippi, L.L.C.*, ___ F.3d ___, No. 15-60562, 2016 WL 5400401, at *10 (5th Cir. Sept. 27, 2016) (footnotes and internal quotation marks omitted); *see also id.* at *18 ("Rule 26(d) gives [the] court wide discretion to craft flexible and nuanced terms of discovery." (footnote omitted)).

The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984).

Federal Rule of Civil Procedure 26(c)(3) provides that, in connection with a motion under Rule 26(c) for a protective order, Federal Rule of Civil Procedure "37(a)(5) applies to the award of expenses." FED. R. CIV. P. 26(c)(3).

## Analysis

Dr. Kindley did not object to the subpoena – he simply redacted information that he states that he believes that he was required to protect by law. Neither Dr. Kindley nor Holmes seek to quash or modify the subpoena, and Holmes does not quarrel with production under the subpoena of her own patient records, for which she has provided an authorization. Holmes' response to the MTC could be read as seeking a Rule 26(c)(1) protective order, although she does not expressly ask for one other than to request that the Court deny the MTC and "uphold the protections provided by statute for confidential mental health records." Dkt. No. 63, at 2.

The MTC turns entirely on whether the redactions were necessary and proper or whether unredacted copies could be produced under an appropriate confidentiality order, a proposed version of which NTHCL has submitted. NTHCL admits that "[t]he only section [of the Texas Health and Safety Code] possibly relevant to Holmes' argument states that a professional shall delete 'confidential information' about another person who has not consented to the release," but NTHCL argues that "Holmes has already drawn her argument outside of this section, as she fails to argue that the redactions cover 'confidential information,' and only the identities and information of other persons." Dkt. No. 64 at 4 (quoting TEX. HEALTH & SAFETY C. § 611.045(g)).

Texas Health and Safety Code § 611.045(a) provides that, "[e]xcept as otherwise provided by this section, a patient is entitled to have access to the content of a confidential record made about the patient," and Section 611.045(g) provides that "[a] professional shall delete confidential information about another person who has not consented to the release, but may not delete information relating to the patient that another person has provided, the identity of the person responsible for that information, or the identity of any person who provided information that resulted in the patient's commitment." TEX. HEALTH & SAFETY C. §§ 611.045(a), (g).

"Notwithstanding Section 159.002, Occupations Code, this section applies to the release of a confidential record created or maintained by a professional, including a physician, that relates to the diagnosis, evaluation, or treatment of a mental or emotional condition or disorder, including alcoholism or drug addiction." *Id.* § 611.045(j). A "'[p]atient' means a person who consults or is interviewed by a professional for diagnosis, evaluation, or treatment of any mental or emotional condition or disorder, including alcoholism or drug addiction." *Id.* § 611.001(1). Texas Health and Safety Code § 611.002(a)-(b) provides that "[c]ommunications between a patient and a professional, and records of the identity, diagnosis, evaluation, or treatment of a patient that are created or maintained by a professional, are confidential" and that "[c]onfidential communications or records may not be disclosed except as provided by Section 611.004 or 611.0045." *Id.* §§ 611.002(a)-(b). And "[t]he privilege of confidentiality may be claimed by: (1) the patient; (2) a person listed in Section 611.004(a)(4) or (a)(5) who is acting on the patient's behalf; or (3) the

-12-

professional, but only on behalf of the patient." *Id.* § 611.003(a). Under Texas Health and Safety Code § 611.004(a)(4), "[a] professional may disclose confidential information only: ... to a person who has the written consent of the patient." *Id.* § 611.004(a)(4). And "[a] person who receives information from confidential communications or records may not disclose the information except to the extent that disclosure is consistent with the authorized purposes for which the person first obtained the information," but "[t]his subsection does not apply to a person listed in Subsection (a)(4) or (a)(5) who is acting on the patient's behalf." *Id.* § 611.004(d). Finally, "[a] professional may disclose confidential information in: ... a judicial or administrative proceeding in which the patient waives the patient's right in writing to the privilege of confidentiality of information." *Id.* § 611.006(a)(3).

This Court "must interpret Texas' statutes the way [the Court] believe[s] the Texas Supreme Court would. When the highest state court is silent on an issue [the Court] must make an *Erie* guess, using the sources of law that the state's highest court would look to." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015) (citations and internal quotation marks omitted). The Fifth Circuit has explained the rules for interpreting Texas statutes:

> When interpreting a Texas statute, we follow the same rules of construction that a Texas court would apply – and under Texas law the starting point of our analysis is the plain language of the statute. Texas courts aim to determine and give effect to the Legislature's intent when construing a statute. When a statute is clear and unambiguous, Texas courts apply its words according to their common meaning in a way that gives effect to every word, clause, and sentence. If a statute's words are unambiguous and yield a single inescapable interpretation, the judge's

> inquiry is at an end. When a statute defines a term, the court is bound to construe that term by its statutory definition only. Further, the court should consider a provision in the context of the broader statute because [o]nly in the context of the remainder of the statute can the true meaning of a single provision be made clear.

*Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, 814 F.3d 242, 248-49 (5th Cir. 2016) (footnotes and internal quotation marks omitted); *see also Hoffman v. L & M Arts*, No. 3:10-cv-953-D, 2015 WL 1000838, at *4-*5 (N.D. Tex. Mar. 6, 2015) ("When construing a statute, Texas courts attempt to determine and give effect to the Legislature's intent, looking first to the plain and common meaning of the statute's words. If a statute's meaning is unambiguous, Texas courts generally interpret the statute according to its plain meaning. This is because it is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent. Also, ordinary citizens should be able to rely on the plain language of a statute to mean what it says. .... To make this determination, the court must give these terms their ordinary meaning." (citations and internal quotation marks omitted)), *aff'd*, ___ F.3d ___, No. 15-10046, 2016 WL 5431818 (5th Cir. Sept. 28, 2016).

The statute does not appear to define the scope or meaning of "confidential information about another person who has not consented to the release." Section 611.045(g) covers a mental health professional turning over to the patient her own records. It is hard to understand the provision, then, as requiring redaction of the names or identities of other persons provided by that patient to the provider, as opposed to redacting communications between that other person (as a patient) and a

professional or records of the diagnosis, evaluation, or treatment of that other person (as a patient) that are created or maintained by a professional. *See, e.g.*, *Thapar v. Zezulka*, 994 S.W.2d 635, 638 (Tex. 1999) ("The statute classifies communications between mental-health 'professional[s]' and their 'patient[s]/client[s]' as confidential and prohibits mental-health professionals from disclosing them to third parties unless an exception applies." (footnote omitted)).

The Court concludes that Section 611.045(g)'s redaction requirement covers communications between that other person (as a patient) and a professional or records of the diagnosis, evaluation, or treatment of that other person (as a patient) that are created or maintained by a professional.

Holmes also cites Texas Health and Safety Code § 181.151, which provides that "[a] person may not reidentify or attempt to reidentify an individual who is the subject of any protected health information without obtaining the individual's consent or authorization if required under this chapter or other state or federal law." TEX. HEALTH & SAFETY C. § 181.151. This section, by its own terms, does not itself require the consent of another person identified in a patient's records.

Further, HIPAA contains explicit authorization for the release of patient medical records under 45 C.F.R. § 164.512(e), under which the Court may order that the parties are prohibited from using or disclosing Holmes' protected health information for any purpose other than this litigation for which such information was requested and that Defendants shall then return to the covered entity for destruction of the protected health information (including all copies made) at the end of the litigation or

-15-

proceeding. The Court concludes that Section 611.045(g)'s redaction requirement covers communications between that other person (as a patient) and a professional or records of the diagnosis, evaluation, or treatment of that other person (as a patient) that are created or maintained by a professional.

Understanding the aforementioned statutes as discussed above, the Court conducted an in camera review to determine whether the redacted documents contain confidential third party information that must be deleted or whether unredacted copies could be produced under a HIPAA-complaint protective order.

The Court first finds that Dr. Kindley correctly redacted or withheld confidential information about third parties within Holmes' medical records that Dr. Kindley elicited to treat those parties. This specifically includes the information that he redacted from Holmes' medical records on Pgs. 1, 3, 4, 5, 7, 8, 12, 13, 14, 18, and 19 as well as the second redaction on Pg. 9 and the accompanying attachment to Pg. 18. The redacted information on these pages contains highly sensitive information about the third parties that are intermingled with Holmes' records only because of the parties' relationship with her. This includes information concerning their actual and potential diagnoses, family histories, intimate thoughts, and treatment plans. In other words, the redactions contain the precise information that Dr. Kindley is obligated to protect under the aforementioned statutes. The records appear to show that the third party personally met with Dr. Kindley, received counseling from him, and in some cases received actual treatment plans. In short, these third parties were Dr. Kindley's patients. *See* TEX. HEALTH & SAFETY C. § 611.001(1) (defining a patient as "a person

-16-

who consults or is interviewed by a professional for diagnosis, evaluation or treatment of any mental or emotional condition or disorder"). They were thus entitled to the same protections afforded to Holmes or any other patient. *See id.* § 611.004(a)(4) (providing that "[a] professional may disclose confidential information only: ... to a person who has the written consent of the patient"). Moreover, even if they were not Dr. Kindley's patients, Holmes cannot consent to the release of medical records that also implicate a third party's medical history. *See id.* § 611.045(g) (requiring that providers "delete confidential information about another person who has not consented to the release" of the records). Accordingly, if NTHCL still wishes these unredacted records, it must provide Dr. Kindley with authorizations confirming that the third party consents to the release of this information.

But the Court finds that Dr. Kindley must remove the remaining redactions – namely the redactions on Pg. 6 and the first redaction on Pg. 9. The records appear to show that these redactions do not relate to a patient that Dr. Kindley is treating. Nor do they include diagnoses, treatment plans, evaluations, or other types of confidential information protected by Section 164.512(e). While these records contain other information that is sensitive, even if not protected by Section 164.512(e), a protective order, as NTHCL proposes, will assure that the information remains confidential and used only in this litigation.

The Court will order counsel for Holmes and counsel for NTHCL to negotiate and submit for the undersigned's signature a protective order to cover these patient

-17-

records produced pursuant to the subpoena to Gary Kindley, LPC that complies with the requirements for a qualified protective order under 45 C.F.R. § 164.512(e).

### Requests for Award of Expenses

Under Rules 26(c)(3) and 37(a)(5), the Court determines that, under all of the circumstances presented here, Holmes and NTHCL should bear their own expenses, including attorneys' fees, in connection with NTHCL's MTC.

### Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Defendant's Motion to Compel Compliance with Subpoena Duces Tecum for Plaintiff's Records from Gary Kindley, LPC [Dkt. No. 57]. The parties must, by **October 28, 2016**, submit to Horan_Orders@txnd.uscourts.gov a proposed protective order to cover these patient records produced pursuant to the subpoena to Gary Kindley, LPC that complies with the requirements for a qualified protective order under 45 C.F.R. § 164.512(e). Gary Kindley, LPC is ordered to re-produce the documents pursuant to the instructions laid out in this order, and subject to this protective order to be signed and entered by the Court, by **November 1, 2016**.

SO ORDERED.

DATED: October 25, 2016

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE